## SOUTHERN OIL COMPANY V. J. J. WILSON ET AL.

### Decided January 22, 1900.

**1. Contract—Mutuality—Offer to Compromise.**

A written offer to compromise a suit brought to cancel an oil lease, stating that defendants would deliver back the leased property to plaintiff on his paying the current market price of the materials in the wells on the property and attached thereto, is not (such offer having been accepted) invalid for want of mutuality because there is some contention between the parties as to whether the current market price referred to new or second-hand materials.

**2. Same—Compromise with Option to Another.**

Defendants when offering to compromise by delivering back the leased property, had already given to a third party an option to purchase the lease, but such option not being made a condition to their offer, could not affect plaintiff's right thereunder.

**3. Same—Offer to Compromise Not Withdrawn.**

Nor were plaintiff's rights affected by the fact that while the offer of the defendant company to compromise was still pending, it sold to third parties a majority of its stock and that plaintiff knew of this before his acceptance, since such knowledge was not notice to him of an intention to withdraw the offer, and the sale of the stock did not devest defendant's title to the property.

**4. Judgment—Delivery of Property—Payments Due Thereon.**

In an action to cancel a lease executed by plaintiff, a judgment that he should recover the premises on paying a certain amount agreed on in compromise, and that on his failure to pay such amount the defendant should deliver the property to plaintiff, or to the clerk of the court, was erroneous because requiring defendant to deliver the property without security for the amount due by plaintiff thereon.

**5. Same—Delegating Judicial Powers to Clerk.**

So, it was error for such judgment to authorize the clerk of the court to deduct from a stated amount the value of certain property, so that the remainder should be the amount due under the judgment, since the value of such property might be a matter of dispute between the parties, and the court could not delegate judicial powers to its clerk.

APPEAL from Navarro. Tried below before Hon. L. B. COBB.

*Simkins & Mayo* and *C. L. Jester,* for appellant.

*C. W. Croft,* for appellees.

RAINEY, ASSOCIATE JUSTICE.—This suit was instituted on the 17th day of September, 1898, by J. J. Wilson and W. B. Sweatman, against the Southern Oil Company, to vacate and cancel a certain oil lease on fourteen acres of land, part of the Railway addition to the city of Corsicana, which was made by said plaintiffs to the Southern Oil Company on the 21st day of May, 1897, on the ground that said company had violated its contract in refusing to develop said oil land, and to protect said lease by boring wells, and preventing other parties from taking the oil from said territory, which they verbally promised to do, and for refusing to permit plaintiffs to sink wells to protect the oil therein, and develop the lease, to plaintiffs' damage $10,000; also for $100 rent of said land, and the further sum of $2000 for gas from said wells used and sold by defendants, and further, that defendants had wholly failed to properly

pump said wells bored by them, causing a loss of oil to plaintiffs; that plaintiffs by said acts had the right to declare such contract a nullity; and they prayed the contract to be declared null and void, and for a writ of restitution. The contract of lease was filed as an exhibit to the petition.

On November 1, 1898, the defendant filed its answer: (1) A general demurrer. (2) Special exception to the petition in setting up a verbal addition to the written contract of agreement to protect plaintiffs' land, no consideration being alleged for such parol agreement, and because said verbal addition concerned land it was unenforceable. (3) General denial. (4) Special answer denying said verbal contract, and alleging that while the contract only required two wells, the company had bored three, which were of great value, and was all that the territory would bear, and that the gas had produced no profit whatever.

Pending this suit, and about March 10, 1899, the Southern Oil Company, by resolution of its directors, gave to C. D. Pullen and his associates an option of purchase at a certain price on all the properties and franchise of the Southern Oil Company; the option to extend to 6 o'clock p. m., on April 6, 1899. Afterwards, on March 25, 1899, in contemplation of the fact that the said Pullen and associates might not close the option, Dr. S. W. Johnson, then president, offered a compromise of the pending suit to plaintiffs' attorney, C. W. Croft, by which the company would deliver the property and wells to plaintiffs on plaintiffs' paying to defendants the current market value of the material in the wells and attached thereto. This offer was in writing. Defendants claims it was made subject to the pending option. Plaintiffs deny it, but say it was an absolute, unqualified offer. The compromise was not accepted at the time. On April 6th, C. D. Pullen & Co. closed out the option. The papers were signed on the 8th, and the property delivered. On the 10th, plaintiffs accepted in writing by mail the offer of compromise, knowing that C. D. Pullen & Co. had purchased the franchise and property. And on defendants refusing to recognize said compromise, plaintiffs amended their original petition on May 22, 1899, by adding thereto a count setting up the compromise, praying for a specific performance thereof, and for the value of all oil produced therefrom from the 10th day of April, and if the compromise was not enforceable, then to recover on the original cause of action.

On May 24, 1899, defendants answered that said offer of compromise was made pending and subject to an option of purchase given to certain parties, and was so understood and known by said plaintiffs and their attorney. And further, that after the offer was made plaintiffs' attorney notified defendants that the plaintiffs would only pay the value of second-hand material, and not the current market value, and defendants then and there refused to abide by said offer.

Also the general denial.

The court sustained demurrers to the original cause of action, except the claim for the gas and rent of land. Plaintiffs went to trial on these

items and on the compromise. The jury found in favor of plaintiffs for specific performance of the compromise, and for the sum of $1701 as price of material in favor of defendant, and the sum of $269 as price of oil since April 8, 1899. The plaintiff entered a remittitur for $174 on the account found in their favor by the jury, and a motion for new trial being overruled, defendants appeal and assign errors.

*Opinion.*—It is contended by appellant that "the court erred in refusing to instruct the jury that the minds of the parties must meet and concur upon the terms of the compromise to make the same valid and binding." The proposition of compromise was as follows:

"CORSICANA, TEXAS, March 25, 1899.

"C. W. Croft, Esq.: Dear Sir.—The Southern Oil Company will part with its Wilson & Sweatman oil lease, together with the three wells located on it, for the current market price of the material in and attached to said wells; this includes. all the piping, tanks, tankhouses, pumping outfit, derrick, and every other character of property owned by the Southern Oil Company on said lease.

"This proposition is made to you as attorney for W. & S., and is meant as a compromise offer.

"SOUTHERN OIL COMPANY,<br>"By S. W. Johnson, President."

Defendant plead as follows: That after said offer was made, and while pending, the counsel for plaintiffs stated to defendants that in case of acceptance of defendants' offer, plaintiffs would only pay for the material attached to the wells as second-hand material, and not at current market rates, and that defendants then and there declined to be held by such offer.

The evidence on this issue was: Dr. Johnson testified that after the offer was accepted he charged plaintiffs with acting in bad faith in accepting a compromise, after they knew that the option was closed; that he remembered distinctly of interlining "current market price," in his proposition to sell, and he had reference to the current market price of the kind of material on the W. & S. lease, and that Mr. Croft, attorney for plaintiffs, stated to him, "Well, Doctor, I have had the case set off for a future day, because I feared there would be some misunderstanding between us as to the price to be paid for the material, thinking that you may claim that you are entitled to the price as for new material." I had two or three conversations with Mr. Croft about compromising this case after I made the proposition.

Mr. Croft says: "I requested Dr. Johnson to put his proposition in writing. Dr. Johnson at my request wrote the proposition and handed it to me. It is in evidence. I remember the interlined word 'current.' Material was then on the advance in price. The difference in value was from 25 to 75 per cent."

It will be noted that the term "current market price" was interlined in the proposition of compromise, and it was accepted in that condition. The compromise proposition being in writing, we are of the opinion that the mere fact that there was some contention on the trial as to the proper construction of the term "current market price" is not sufficient to warrant a holding that the compromise can not be enforced on the ground that the minds of the parties did not meet and concur. Besides, there is no assignment of error that the value of the material was not assessed by the jury at its "current market price" as that term was understood by appellant, nor did the fact that an option existed in favor of Pullen & Co. require a charge on this phase of the case. If Dr. Johnson did not make the option a condition of compromise, the fact that it existed would not affect appellees' rights thereunder.

The next contention is, that at the time the proposition of compromise was made appellant had given to Pullen & Co. an option to buy its entire corpus and property, which option was limited to April 6, 1899, and that said proposition of compromise was made subject to said option being accepted by Pullen & Co. on or before that date, in which event said proposition of compromise as understood between the parties was to be considered as withdrawn. That on said 6th day of April, in accordance with said option, appellant sold and conveyed to Pullen & Co. all its entire corpus and property, by which said proposition of compromise was annulled and its acceptance by appellees on April 10th thereafter was of no binding effect.

It is further contended that if Croft did not know of the Pullen & Co. option at the time the proposition of compromise was submitted to him, he learned of it and the sale to Pullen & Co. before he accepted it, which was sufficient notice of the withdrawal of said proposition and rendered his acceptance thereof ineffectual.

This contention should be sustained if supported by the evidence. In treating upon this subject, Mr. Clark, in his work on Contracts, page 50, says: "It is probably settled that a sale of the property to some other person, or any other overt act clearly showing an intent to revoke, is enough, provided the person to whom the offer was made has notice of such acts before he accepts. The revocation need not be communicated, but it is sufficient if he has knowledge of acts clearly indicating an intention to revoke."

Accepting this as the correct doctrine, the question arises, does the evidence show such a state of facts that Croft or appellees knew at the time the proposition of compromise was submitted that it was subject to the Pullen & Co. option, or had sufficient notice of a retraction or revocation of said proposition before its acceptance?

The evidence shows that the negotiations for a compromise were conducted by Johnson, the president of the Southern Oil Company, and appellant and Croft, attorney for appellees. Johnson testifies that when he submitted the proposition of compromise to Croft, he notified him of the Pullen & Co. option and that the offer was made subject to said

option, and subsequently, before April 6th, told Croft about the option, but that he never notified Croft of any withdrawal of the proposition before its acceptance. On the other hand, Croft testified that at the time the proposition of compromise was made nothing was said about the Pullen & Co. option. That the written proposition expressed the entire contract. About one week after the proposition was made Johnson told him that Pullen & Co. had an option, and asked him to wait until after April 6th, before accepting, but did not state why he wanted him to wait. He heard of the Pullen & Co. deal before he accepted the proposition.

There is a conflict between these parties as to whether there was any condition relating to the proposition of compromise. The issue was submitted to the jury by the court, and the jury having found adversely to appellant, we must conclude that no condition was made. There being no qualification of the proposition, the next inquiry is, was the fact that Croft had heard of the Pullen & Co. trade before his acceptance sufficient to give him notice of the intent to revoke or withdraw the proposition? We think not. According to Croft's testimony he was only to wait until after the 6th of April, and no reason was assigned why he should do so, though he did wait. Nor were the terms of the deal with Pullen & Co. inconsistent with the proposition of compromise and sufficient to show an intent to revoke it. Such might have been the case had the Southern Oil Company, by such deal, sold its entire corpus and property, and such was known to Croft or appellees, but such is not the case as shown by the evidence as we understand it. Pullen testifies, and this is not contradicted, that he and associates "bought nearly the entire assets, including everything the Southern Oil Company owed, in a lumping trade. I mean we bought the stock of the company. * * * We did not buy all the stock. Dr. Johnson still owns some, and is a director in the company now." It is true Dr. Johnson says that the option held by Pullen & Co. was to buy all the properties of appellant, but he does not state that the trade as consummated differed from that as stated by Pullen.

The purchase of the stock did not divest the appellant of the title to the property. The title still remained in the Southern Oil Company, and none of its contracts were affected by the transfer of stock. It had the right to sell its properties, and had it done so, a different rule might prevail. But as it was, there was nothing in the transaction to relieve it from its obligations, and authorize a recovery.

There being no withdrawal or revocation of the proposition of compromise before its acceptance, plaintiffs were entitled to recover. It was not error to allow plaintiffs to enter a remittitur and allow the judgment amended accordingly.

The judgment, after decreeing that plaintiffs were entitled to recover the property, and, upon payment of the amount adjudged to be the cost of the material to the clerk of the court, would be entitled to their writ of restitution, further adjudged that in the event plaintiffs failed to

pay said amount within twenty days from the date of judgment "defendants shall turn all said property, including oil wells and all material in and attached to same, together with all the oil (less a sufficient amount to pay for the production of same) produced by said wells, over to said plaintiffs, or to the clerk of this court for plaintiffs. Whereupon the clerk of this court shall, at the request of the defendant, Southern Oil Company, deduct the value of the oil produced by the wells on said property, less the actual costs of production from the said sum of $1431.38, and the remainder so found will be the amount due from plaintiffs to said defendant, and said clerk shall issue execution therefor in favor of the defendant against said plaintiffs jointly and severally as required."

This is erroneous in two particulars:  (1) In requiring defendant to turn over the property in the event plaintiffs fail to pay over the amount adjudged against them within twenty days. This is inequitable in that, if plaintiffs fail to pay over the money defendants would be required to turn over the property and thereby be deprived of their security which they are entitled to hold for the payment of the money by plaintiffs. (2) It delegates to the clerk the power to adjust the rights of the parties pertaining to the oil that might be produced by the wells after the date of the judgment and issue execution accordingly. This is a matter, in case of difference between the parties, which would involve the exercise of judicial functions, and these the clerk does not possess, and the court was without power to invest him with them.

These errors, however, do not require a reversal of the judgment. The judgment will be reformed, authorizing a recovery of the property by plaintiffs upon payment of the amount adjudged against them (less the amount due them for the oil produced up to the trial) within twenty days after the return of the mandate in this cause. The rights of the parties as to the oil produced after the trial of this cause below will not be here determined, but will be left open for settlement between the parties, or for adjustment by future judicial proceedings, if necessary. Costs of this appeal to be taxed against appellees.

The judgment is reformed and affirmed.

*Reformed and affirmed.*