MISSOURI, K. & T. RY. CO. OF TEXAS v. SEEGER.  (No. 7269.)

(Court of Civil Appeals of Texas.  Dallas. April 3, 1915.)

1. RAILROADS ⚍73 — TRAFFIC CONTRACTS — CONTRACT TO DELIVER OVER SPUR TRACK.

Where plaintiff's lessor had the right to the use of a spur track under a contract with defendant railroad, plaintiff, a dealer in wood, coal, gravel, etc., had all privileges pertaining to such use for carrying on the business in which he was engaged, whether to receive goods over the track, which he owned, or goods which he was to hold for the owners merely as bailee, whether or not he was paid for his services.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. ⚍73.]

2. CARRIERS ⚍18 — DISCRIMINATION — STATUTE.

Under Rev. St. art. 6670, defining and prohibiting unjust discrimination on the part of any railroad, where defendant road refused to deliver to plaintiff, who dealt in wood, coal and building materials, all shipments consigned to him, whether or not he was owner thereof, a distinction not drawn in the case of others similarly situated on a spur track, the road was guilty of an unjust discrimination, and, pending a final determination of plaintiff's right, he was entitled to have a temporary injunction ordering the road to extend to him the same privileges as were given to others.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. ⚍18.]

3. CARRIERS ⚍18 — DISCRIMINATION — STATUTE.

Under Rev. St. art. 6670, defining and prohibiting unjust discrimination on the part of any railroad, a road, by refusing to deliver to one doing business on its spur track shipments from localities or persons not served by its own line, but by connecting lines works an unlawful discrimination against such localities or persons that may be enjoined.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. ⚍18.]

4. CARRIERS ⚍18—CONTRACT TO DELIVER ON SPUR TRACK—ENFORCEMENT.

By the lease of the premises used in his business, plaintiff had the right to receive deliveries over a spur track of the defendant railroad, a contract between the defendant road, the city, and plaintiff's lessor for the construction of such track, embodied in a city ordinance granting a franchise for 20 years, having nearly that period of time to remain in effect. *Held* that, when full use of such track was denied to plaintiff by the road, a mandatory injunction compelling the road during the pendency of the suit to deliver upon such track all cars of material consigned to the plaintiff was proper, though not limited to the time that plaintiff might operate the track.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. ⚍18.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by J. B. Seeger against the Missouri, Kansas & Texas Railway Company of Texas.  Judgment for plaintiff, and defendant appeals.  Affirmed.

C. C. Huff and J. M. Chambers, both of Dallas, for appellant.  Etheridge, McCormick & Bromberg, of Dallas, for appellee.

RAINEY, C. J.  "This is an action by appellee for a temporary writ of mandatory injunction to require appellant to deliver upon a certain industry track in the city of Dallas all cars of wood, coal, and building material consigned to appellee or J. B. Seeger & Co., which may be placed upon the interchange track of appellant at Dallas by other lines of railway entering said city.  Upon a hearing had after notice the court, on June 27, 1914, granted the petition and caused to be issued the temporary writ of injunction, whereby appellant is enjoined from failing to switch and transport from the intersection of its line of railway with all other lines entering Dallas to the Moberly spur track and stop thereon all cars of wood, coal, and building material consigned to appellee or J. B. Seeger & Co., from which judgment of the court appellant perfected its appeal."  Appellee's petition in substance—

"alleges that he is engaged in the business of dealing in wood, coal, gravel, and building material in the city of Dallas, which he purchases at various points outside of the city upon lines of railways other than of appellant; that he is the owner, as lessee, of a certain switch track in the city of Dallas, which connects with appellant's line of road, and with no other road in said city, which is known as the 'Moberly City Switch,' and owns land adjacent to said switch, upon which is located his bins and offices used in connection with his said business.  He alleges it to be the duty of appellant, upon the payment of proper charges, to deliver to him upon said switch all cars of such wood, coal, gravel, and building material consigned to him from points on other lines of road outside of Dallas which may be tendered to appellant upon its exchange track by such other lines over which such material reaches Dallas, and that a certain car of gravel which reached Dallas over the St. Louis, San Francisco & Texas Railway Company, and placed upon the exchange track of said last-named company and appellant, had not been delivered to him upon said Moberly city switch by appellant, though due notice thereof had been given appellant, and a request made for its delivery upon said switch, and further alleges that defendant had threatened to continue to refuse to transport and set over to said Moberly spur track such cars of material as reached Dallas over the lines of other railway companies, alleging such refusal to arise out of a personal animosity of J. L. West, appellant's traffic manager, toward appellee.  He further alleges such failure to deliver such cars to be an injury to his business, causing him irreparable damage not measurable according to the rules of the common law, and that there exists an immediate necessity for the delivery of said car of gravel, and of all other cars ordered and to be ordered by appellee and tendered to appellant for delivery upon said spur track, and alleges, further, that appellant has heretofore recognized appellee's right to have such cars shipped to said spur track by customarily switching same thereto, and prays for a temporary writ of injunction as above stated.  After the filing of said petition, and notice thereof to appellant, and before the hearing, appellant filed its reply thereto, denying that it had ever failed to extend to appellee all such service as he was legally entitled to receive in connection with the said Moberly spur track, and denied that it has ever refused, or was then refusing, to make such deliveries upon said spur track as appellee was entitled to have made, and alleged that said track

was an industry track built upon the land of A. F. Moberly under a contract, by the terms of which said Moberly was to have all the rights and privileges in the use of said track as pertain to private industry tracks, except a certain use granted to the city of Dallas. It further alleged that appellee was demanding that he be permitted to use said industry track as a team track for the unloading of cars of gravel and other building material belonging to other people having no rights to the use of such industry track, which appellee has caused to be consigned to him, so as to enable him to procure the delivery thereof upon said industry track, and for which use of said track by such third parties appellee charged and received from them a certain price per car, and that such material was not to be used by appellee in connection with his business, but to be unloaded upon wagons from the cars by the owners of such material, and appellant further alleged that the said industry track was not a part of its switch yards of the city of Dallas, and was not suitable for or intended as a team track, except as to material for improvements consigned to the city of Dallas. By a supplemental answer filed, pending the hearing of said application, and after appellee had testified in reference to the car of gravel, appellant conceded his right to have the specific car of gravel mentioned in his petition delivered to him upon said spur track, upon the showing made by him that the same was to be unloaded at his place of business, and not upon wagons for hauling from the car, and by said supplemental answer appellant consented to deliver the car of gravel upon said industry track as soon as same was placed upon its transfer track by the said St. Louis, San Francisco & Texas Railway Company, over whose line said car reached the city of Dallas."

Appellee claims his right in the use of the spur track in question under the contract made by A. F. Moberly with appellant, dated April 13, 1909, appellee being the lessee of Moberly. Said contract recites in substance:

"That said Moberly, desiring the railway company to construct and operate a switch or spur track over and across said tract of land, and in consideration of the conditions to be performed, leases to the said railway company a strip of land 20 feet in width, or 10 feet on each side of the center line of the spur track previously constructed by appellant on said premises, which are fully described in said contract; the contract reciting that the lease is 'for such length of time as the party of the first part shall maintain and operate said switch and spur track.' The appellant is named in the contract as the party of the first part. In paragraph 3 of the contract it is provided: 'The party of the first part hereby agrees to construct, maintain, and operate upon said land the switch or spur track above mentioned, giving to the party of the second part in connection therewith all the rights and privileges as to the use of the track that pertain to private industry tracks, except as herein stated; but the material used in the construction and maintenance of said track shall be and remain the property of the party of the first part.' The track is to remain the property of appellant, but said Moberly is to have 'all the rights and privileges as to the use of the track that pertain to private industry tracks, except as stated in said contract, which gives to the city of Dallas the right to use the first 200 feet from the east line of the Cedar Springs street for loading and unloading material for the city.'"

This spur is situated about 1½ miles from the main yards and freight depot of appellant. Appellee was a dealer in wood, coal, gravel, and building material, and his place of business was situated on said spur. Most of the goods consigned to him at said place of business were owned by him, but some of them he did not own, but was bailee, in that he received the goods from the appellant for the owner, paid freights that were to be paid at destination, looked after the reception and unloading of the car, had it unloaded to teams if desired by the owner, or, if the owner desired, stored it on appellee's premises until such time as the owner saw fit to move it away. Appellee's business ran along smoothly until a controversy arose between appellant's general freight agent, J. L. West, and appellee, concerning the removal of an office which appellee had situated on or near the right of way. This engendered such a feeling on the part of Mr. West that he stated to appellee: "Well, if I had the power, I would run you off the system." After this appellee had considerable trouble getting goods delivered to him on said spur that arrived over lines at Dallas, Mr. West instructing local agents not to deliver at such switch to appellee freight consigned to him, unless appellee could first satisfy them that the said freight would not be unloaded from the car into wagons for hauling from the premises. At that time appellant was permitting any freight which arrived over other roads to be unloaded there. There arrived at Dallas a car of gravel over the Frisco road consigned to appellee, which was intended for his own use, and not intended to be unloaded to teams. This was made known to appellant's agents, but they refused to deliver it. When appellee threatened to bring suit, the agent said to him:

"Bring it and be damned; that he was not going to switch any brick, or anything else up there, for me, except coal and wood; that I was in that business; that I could handle that, but that they were not going to switch brick and gravel, or anything else, up there."

J. L. West, for appellant, testified:

"That he was traffic manager of the Missouri, Kansas & Texas Railway Company of Texas; that there is a difference made in the use of industry tracks as to shipments coming over the line which owns the industry track and shipments that come in over other lines into the city or town where such industry is located; that it is the custom upon all railroads in Texas and other states to switch for each other on a reciprocal basis for industries, but that there is a distinction made as between industry tracks and team tracks; that it is not customary anywhere for one railroad to switch to its team track freight which reached the town over the line of some other road; that a team track is regarded as an individual facility just as a freight house, and that freight houses are not used in delivering or receiving freight received from some other line, and that team tracks are not so used; that industry tracks are treated differently for the reason that the industry located on such track has engaged the use of that track, and usually pays something for such use; that in consideration of such payment there is a reciprocal arrangement between railroads by which they switch for each other traffic to and from industry tracks, making a distinction as between industry tracks and team tracks; that for material coming over appellant's line, consigned to appellee there would be no objection

to his using the industry track as a team track, but, if reaching Dallas over foreign lines, appellant would object to such freight being unloaded to teams from this industry track, or using it for the benefit of such other lines as a team track; that industry tracks are not used as team tracks for freight coming in over other lines; that appellant treats the owners of other industries having industry tracks in the same way that it treats appellee, and if instances occur in which other industry tracks are more favorably treated it is because of some mistake."

Mr. West further testified:

"It is a fact, as I have stated, that if this gravel had come in over our own line from the point of origin, or if it had originated on the line of another company and we had gotten a part of the haul over and above the switching charge, we would have set it up there for Mr. Seeger; that is the custom; and it would have been unloaded with teams or any other way; that is the custom. The gravel having come into Dallas over another road, we would not switch it out there, because it is not customary to do so in such cases. I will haul wood and coal to him out there on our competitors' line in car loads, and switch it. If he unloads gravel in his industry there, if that is the commodity that he is dealing in, and he unloads it in the yards, we will switch it. I do not say, if he unloads any part of it in his yard; I said, if he unloads the whole car. We do not do switching on public delivery tracks for connecting lines. If there is a private industry on it, we do it for connecting lines only for that industry. If there is a warehouse there, that would be included in the term 'industry.' Yes; I think 'industry' or 'warehouse,' in the language of the circular here, synonymous in the sense we are discussing. * * * Yes; I say that Mr. Seeger has not got any industry or warehouse up there, or, if he has, it is only the coal or wood. If I am wrong with that, our position falls with it; he will have to show us, or show the court."

[1] Under the first assignment of error appellant presents the proposition that:

"Appellee having no right to any use of said industry track, or to any service in connection therewith, except as provided by said contract, which, by its terms, secures to him only such rights and privileges as pertain to private industry tracks, and the evidence, without conflict, showing that the right to have material reaching Dallas over the lines of other railway companies, placed upon such track for unloading on wagons for hauling away, and not to be unloaded at or used in connection with some industry track, the court erred in so making its order as to compel appellant to deliver to appellee on said track, on his order, all cars of wood, coal, or building material which may be consigned to appellee, or J. B. Seeger & Co., reaching Dallas over other lines, and placed upon the interchange track of appellant, and such other lines of railroad in the city of Dallas without limitation as to the ownership of the material or the use to be made of it, or whether to be unloaded on wagons or used in connection with appellee's business or industry."

It is true appellee only claimed the right in the use of the spur track under a contract made by A. F. Moberly with appellant, but under that contract he had all the rights and privileges that pertain to that use, which was for the carrying on of the business in which he was engaged. That business included, as well, the reception of commodities as bailee; as the reception of commodities he owned, and the appellant had no right to distinguish between the two—that is, the commodities he owned and those conveyed to him as bailee. The right of appellant to make inquiry into the ownership of the commodities consigned to appellee before it determines whether or not it will perform the switching service is not contemplated by law. We are of the opinion that appellant under the law is bound to deliver all car loads consigned to appellee which properly belong to his industry and goods consigned to him for the purpose of his doing something in connection therewith, such as receiving them, paying the freight thereon, supervising the unloading thereof, and, if necessary, storing in his bins, constitutes a part of his business. That he makes charges for these services should not concern the appellant.

[2, 3] Again, we think, under the evidence, that there was an unjust discrimination, in violation of article 6670, R. S., against appellee, as argued by his counsel, viz.:

"It is apparent from the testimony that the appellant had opened up the Moberly city switch to the use of persons connected with other industries on that track than appellee, by habitually permitting commodities arriving in Dallas over competitive lines to be unloaded there to teams. The testimony shows that this has been permitted to the contractors of the city of Dallas, and to shippers of wood and brick other than appellee, and also to appellee, until the ill feeling arose between him and the general freight agent of the appellant. Having granted these privileges to others, and to appellee, the appellant is not in position to withdraw them from appellee only, and the court below correctly ruled that, pending the final hearing, the appellee should have the privileges which others were enjoying, and to which he was accustomed, and on the faith of which he established his business on said switch track. But, even if this were not true, the appellant cannot discriminate in the use of the track against localities not on its own line, nor against persons using other lines, by refusing to them the same facilities it affords to shippers over its own lines."

[4] The only other assignment of error we think necessary to notice is the fourth, which reads:

"The court erred in that the order compels appellant to deliver upon said spur track all cars of material consigned to appellee and tendered to appellant by a connecting line in Dallas until the final trial of this action, without limiting the effect of such order to such period of time as the said industry track may be operated by appellant."

While the contract made by appellant with Moberly contained a provision that the lease is "for such length of time as the party of the first part shall maintain and operate said switch and spur track," said contract was entered into on condition that Moberly secured the right from the city of Dallas to cross a street, which Moberly did, and the said city passed an ordinance granting a franchise for 20 years from the year 1908, for that purpose, which was accepted by appellant; also the further provision that Moberly should pay appellant $10 each year for such construction, of which there is no question of its being paid. The order of the court limited the temporary injunction until the "final

hearing of this cause," and the appellant has no right to discontinue the use of the spur track before the expiration of the franchise or the consent of the appellee and the city of Dallas.

The judgment is affirmed.