## NORTH et al. v. ATLAS LIME CO. et al. (No. 2143.)

Court of Civil Appeals of Texas. El Paso. Feb. 9, 1928.

Easements ⬤=61(6)—Granting of temporary injunction to restrain obstruction of road leading to quarry of plaintiff claiming easement held not abuse of discretion.

In action by company operating quarry to restrain obstruction of road leading to its quarry by rival company operating on premises which road traversed, action of court in granting temporary injunction to enjoin obstruction was not abuse of discretion, where use of road did not inconvenience defendant, but forced discontinuance would destroy plaintiff's business or require considerable expenditure, and where plaintiffs had bona fide claim to easement, even though evidence offered by plaintiffs to show prescriptive right was not satisfactory.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by the Atlas Lime Company and others against G. L. North and others for an injunction. From an order granting a temporary injunction, defendants appeal. Affirmed.

Goggin, Hunter & Brown, of El Paso, for appellants.

J. U. Sweeney and J. E. Quaid, both of El Paso, for appellees.

HIGGINS, J. August 25, 1926, the owners of the Fisher survey leased same to Dudley & Orr for five years with authority to operate a rock quarry upon the premises. September 10, 1926, Dudley & Orr subleased the same to the El Paso Building Material Company, who have since operated said quarry. August 22, 1927, the owners of the Styles survey leased to the Atlas Lime Company 14.73

acres out of said survey north of and adjoining the Fisher survey, with authority to operate a rock quarry upon the premises.

The ingress to and egress from the quarry, upon the Styles survey is a road down an arroyo on the side of Mt. Franklin. The road runs for about 200 feet across a corner of the Fisher survey.

The two companies are competitors in business. After the Atlas Lime Company began the operation of its quarry and using the road mentioned, the El Paso Building Material Company, by its president, C. L. North, obstructed the road by building a fence across it from one side of the arroyo to the other and placing in the road a small sheet iron shanty to be occupied by a watchman placed there to prevent the fence being torn down. It is apparent the fence was not placed for inclosure purposes, but merely to prevent the Atlas Lime Company's use of the road.

This suit was brought by the owners of the Styles survey and the Atlas Lime Company against the El Paso Building Material Company, its president, North, Dudley & Orr, and the owners of the Fisher survey to enjoin the obstruction of the road, the plaintiffs asserting, among other grounds of user, a prescriptive right to the use of the road across the Fisher survey.

Notice to show cause was issued to North and El Paso Building Material Company, who answered, and, upon hearing, a temporary injunction was issued restraining North and the El Paso Building Material Company from obstructing the road and from interfering with plaintiffs in the removal of the fence and house upon the same. North and said company appeal.

The evidence shows that the use of the road by the Atlas Company does not in any degree inconvenience or damage the El Paso Company in the latter's use of the Fisher survey; that such road is the only one to and from the quarry upon the Styles survey; that the quarry furnishes the rock used by the Atlas Company in making lime at its plant, and if use of the road be denied said company will be obliged to discontinue making lime, and its business destroyed; that while another road might be built and used by said company, if a right of way therefor can be obtained, nevertheless it will take some time to construct same and be expensive to build.

In Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle Land Co., 56 Tex. Civ. App. 611, 121 S. W. 716, Justice Reese, in sustaining with some modification a temporary injunction, said:

"We quote from Joyce on Injunctions (vol. 1, § 25): 'Where the rights of the parties are at all doubtful, the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case: "In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied. But where in a doubtful case the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both." * * *

"Our conclusion is that the office and effect of the injunction is only to restore and maintain the status of the property, as it existed before appellants' forcible trespass, until the final hearing or until further order made in the cause by the trial court. As to the merits of the controversy to be adjudicated on the final hearing, involving the right of appellees to continue in the use and operation of the canal through appellants' land, that question is entirely open, and is not in any way affected by our decision of the questions presented on this appeal."

The evidence shows that the road had been in existence for many years and used by the operators of the quarry for hauling rock therefrom.

James L. Marr, one of the trustees of the Caples' Estate, which owned an undivided one-half interest in the Fisher survey, testified:

"There is a roadway in that arroyo. I know there has been a road used there off and on for 22, 23, or 25 years. They used that road to haul rock out of there. People have gone up there from time to time in that arroyo in buggies, wagons, and automobiles, for the last 10 or 12 years; how often, I don't know. There has been a road there every year during the last 10, 12, or 15 years. I don't know how frequently rock has been hauled out the last 10 or 12 years. I know it has been there and used by people; I have been up there. I never sought to close that road as agent. I never heard of the road being closed during the period of time since 1910, since I have been agent, to this date, or of any objection urged by any one with reference to passing to and fro over that road. I was acquainted with that road, in a general way, when Terry had a quarry up there. I knew he was hauling rock out. I don't think that was as long as 30 years ago; it seems to me it was about twenty-five years ago. I should say a roadway has been located right in that canyon, through that arroyo, for the last 25 years."

Some of the witnesses testified the road had been in existence as long as 30 years, and while the evidence as to the adverse character of its use by the owners of the Styles

survey and those operating the quarry thereon, and continuity of such use, is not satisfactory, yet the trial court found the plaintiffs had "a bona fide and substantial claim to an easement over the right of way in controversy." Bearing in mind that the injunction merely preserves, pending final hearing, the status as it was before the road was obstructed, and the balance of hardship and injury, in favor of appellees, we are not disposed to disturb such finding of the trial court. We are not prepared to say that its discretion was abused in such holding. Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle Land Co., supra; Miles v. Bodenheim (Tex. Civ. App.) 184 S. W. 633; Whitaker v. Hill (Tex. Civ. App.) 179 S. W. 539.

Appellant has discussed this case from the viewpoint that the evidence is insufficient to show a prescriptive right to use the road vested in the owners of the Styles survey and those operating the quarry as lessees. But this is not an appeal from judgment after trial upon the merits, and we have not considered the evidence from that viewpoint. We have considered the case from the viewpoint of it being a doubtful one.

We express no opinion as to whether or not the evidence in the present record would support a final judgment establishing a prescriptive right to use the road in favor of the owners of the Styles survey and those operating the quarry under lease from such owners.

Affirmed.