**HIDALGO COUNTY WATER IMPROVEMENT DIST. NO. 2 et al. v. CAMERON COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 5 et al.**

No. 12452.

Court of Civil Appeals of Texas. San Antonio.

Nov. 12, 1952.

Rehearings Denied Dec. 10, 1952.

Strickland, Wilkins, Hall & Mills and Hill, Lochridge & King, Mission, Ewers, Cox & Toothaker, McAllen, Rankin, Kilgore & Cherry, Edinburg, for appellants.

Harbert Davenport and Sharpe, Cunningham & Garza, Brownsville, N. A. Colvin, San Benito, Johnson, Sloan, Phillips,

Hester, Jenkins & Lewis and Kent, Brown & George, Harlingen, Rentfro, Rentfro & Vivier, Brownsville, for appellees.

NORVELL and POPE, Justices.

This appeal is from an order granting a temporary injunction. The basic question involved is whether or not there is a sufficient factual basis in the record for the issuance of a temporary injunction to maintain the status quo, and whether or not the status quo is in fact preserved by the order. Subsidiary contentions are presented relating to an asserted lack of necessary parties, the efficacy of the suit as a class action, and the powers of the master in chancery appointed by the court. Numerous briefs have been filed by the various appellants, but the contentions therein set forth relate in the main to the matters above referred to.

Another phase of the case was before us in July of this year and we denied an application for writ of prohibition. Hidalgo County Water Improvement District No. 2 v. Cameron County Water Control and Improvement District No. 5, 250 S.W. 2d 941. We refer to said opinion in connection with the statement of the case.

The stated purpose of the injunction was to maintain the status quo with reference to the use of the scant waters of the Rio Grande under the facts stated and found by the district judge. Appellants attack the temporary injunction which controls the unrestrained pumping by water diverters. Some appellants, in argument to this Court, concede the power of a court to apportion waters in a proper proceeding, but deny that this is such an instance. Other appellants urge that water apportionment is beyond the judicial powers of a court. The authorities cited in our former opinion dispel such a spirit of hopelessness, and, as said by McKinney on Irrigation and Water Rights, Volume 3, 2d Edition, § 1532:

"In the determination of the rights of the respective parties, where the Court has jurisdiction of the parties and the subject matter of the suit, a court of equity has the power to prescribe the method to be used in measuring the water, and to locate a measuring box for the distribution of the water. And in apportioning the water it is within the power of the Court to apportion the flow to which each party is entitled by periods of time rather than by a division of the quantity when such apportionment would best secure the rights of the parties. And having the power to make such a judgment or decree, the Court also has the power to enforce it, and to so regulate the use of the water by the respective owners as to protect the rights of each from infringement or impairment by others. This may be by way of injunction issued in the same suit determining the rights."

The same rule is announced in 30 Am. Jur., Irrigation, § 15, as follows:

"For the protection of the rights of several riparian irrigators, a court of equity may, in a proper case, apportion the flow of the stream in such a manner as may seem equitable and just under the circumstances. Thus, a court of equity has the power to apportion the flow of water in a stream to the respective owners by periods of time, rather than by a division of its quantity, so that each may have the full flow of the stream during such designated period, instead of a portion of the flow during the whole time, where the circumstances are such that a division in this manner would better conserve the rights of all the owners. This is especially so when the stream, instead of increasing as it goes toward the sea, constantly diminishes until it finally disappears. While the distribution of the waters of the stream among the riparian irrigators is most difficult where the stream is long, the riparian owners numerous, and the quantity of water limited, yet where each of the parties owns the same quantity of land of substantially the same character and their necessities and conditions are substantially the same, an equal distribution of the water of the stream between them will be made, on the ground that it metes out substantial

justice as nearly as substantial justice can be attained. * * *"

■ The purpose of a temporary injunction is not the final adjudication of rights, but, in the exercise of a sound discretion, is the maintenance of the status quo. City of Texarkana v. Reagan, 112 Tex. 317, 247 S.W. 816; Crossman v. City of Galveston, 112 Tex. 303, 247 S.W. 810, 26 A.L.R. 1210; Southwestern Telegraph & Telephone Co. v. Smithdeal, 104 Tex. 258, 136 S.W. 1049; James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959; North v. Atlas Lime Co., Tex.Civ. App., 2 S.W.2d 956, 957; 24 Tex.Jur., Injunctions, § 253; 6 Tex.Jur., Ten Year Supp., § 253.

Appellants urge that there can be no status quo in the case of flowing waters, for once the water passes a given point, it is forever gone, and that which is lost, cannot be restored. The status quo was determined by the court after a full hearing lasting into the second week, during which time evidence was considered that is now before us in three volumes of the statement of facts, covering 1196 pages. That record included expert and other testimony showing the irrigated acres along the Rio Grande and the uses made of the river waters during the years between 1949 and the trial of the suit, as well as earlier years. The record shows further that since sometime before 1948, the water users along the Rio Grande voluntarily formed a Water Conservation Association to cope with the limited flow of the river by a self-imposed rationing among the users. A formula for rationing was developed and by use of the records of the International Boundary and Water Commission the flow of the river was ascertained and thus allocated to meet the needs declared by the users and submitted to the Association. From the reports submitted to the Association, a proration committee made its allocations. This is an over-simplification of the method used, but this system substantially met the needs of the users for a long continuous period of time and remained in operation until April 5, 1952, three days before this suit was initially filed. On April 5, 1952, the rationing committee went out of existence when the users refused to abide by the rationing schedules. The recitals in the decree abundantly reveal the long-standing status of water users and that status was continued in operation by the decree. Those recitals in part stated:

"3. Plaintiffs and Defendants are owners of land riparian to the Rio Grande below the western boundary line of the County of Hidalgo; or else claim and have long used the waters of the river under claim of lawful right, or are organized Districts charged by law with the duty of diverting the normal flow of the Rio Grande for the use and benefit of owners of land riparian to the Rio Grande; or to water users who claim such rights; and all Plaintiffs and all Defendants are entitled by law to their respective correlative shares of the normal flow of the Rio Grande below the western boundary of Hidalgo County, and have long used and exercised such right. Normal flow of the Rio Grande below the San Juan confluence near Rio Grande City, Texas, is commonly and generally considered to be, and for the purposes of this hearing is treated as being, all waters flowing in the channel of the river below the western boundary line of Hidalgo County when the rate of flow of the Rio Grande at Rio Grande City is less than 5,000 cubic feet per second.

"4. The Counties of Cameron and Hidalgo contain more than 275,000 inhabitants, substantially all of whom are dependent upon the waters of the normal flow of the Rio Grande below the western boundary line of Hidalgo County, for household, livestock, and other domestic uses, and for irrigation of their lands; and all other municipal and industrial uses. Due to increased consumption of said water in the Counties of Cameron and Hidalgo in recent years, and diminution of the flow of the Rio Grande due to construction of dams and reservoirs on Mexican and American tributaries of

the Rio Grande, the actual flow of the Rio Grande at periods of highest consumption of said waters has been insufficient each year since 1948 to supply the needs of all water users entitled thereto, without some form of procedure for lawful distribution and control of diversions from the Rio Grande for such uses.

"5. During the years 1949, 1950 and 1951, control and distribution of the Rio Grande at periods of acute shortage was accomplished by voluntary agreement of the water users entitled thereto. Such agreements were not binding upon the water users, and were not intended as a measure of their respective rights, but had the effect of accomplishing reasonable use of the normal flow of the Rio Grande at periods of acute shortage in 1949, 1950, and, less effectively but without too serious complaints, in 1951; but since January 15, 1952, has completely failed of their purpose; and all efforts to procure voluntary distribution were abandoned on or about April 5, 1952.

"6. Due to an extended drought continuing from about December 1, 1951, to the date of this hearing, flow of the Rio Grande has been wholly insufficient to supply the needs of the water users, including Plaintiffs and Defendants herein, of the Counties of Hidalgo and Cameron, who are entitled to the use of said waters; and some form of control and distribution of said water has become necessary to provide for lawful distribution of the American share of the waters flowing in the channel of the Rio Grande below the western boundary of Hidalgo County, as between Plaintiffs and Defendants entitled to its use."

Those findings by the trial court show that for all time prior to 1948 the river furnished ample water for every one. Commencing about that time, a water famine was avoided by a valley-wide voluntary self-control of the supply. By such a means, there continued to be a water supply for all users. Not until shortly before the commencement of this suit did that situation change. The upper diverters abandoned the voluntary water apportionment and "used, much more than their respective reasonable share of the available American flow of the Rio Grande to the detriment of all others riparian owners having lower points of diversion from the stream." From a status where every one received some water, there arose a different status where some received all the water and others received none.

Water is life, and one accustomed to its uses, who suddenly finds his supply is cut off, in our opinion, experiences a materially changed and tragically different status. To divert attention from that important fact is to abandon the substance of this controversy in favor of a legal mirage. Until unrestrained pumping by the up-river users commenced, there was peaceable use of the river waters by every one. Continuously, for more than three years, an uncontested status of voluntary self-rationing prevailed along the Lower Rio Grande. By that method, for several years, the parties, including the appellants, sanctioned an equal and equitable method to cope with a pressing need, and in that status every one received some water. Gill v. Hudspeth County Conservation & R. Dist. No. 1, Tex.Civ.App., 88 S.W.2d 517. A state of action, as well as a state of rest, may constitute the status quo. Had the court denied the relief appellees sought, they would have sustained irreparable injury, in which circumstances courts of equity may issue even mandatory writs before the case is heard on its merits. McMurrey Refining Co. v. State, Tex.Civ.App., 149 S.W.2d 276; Texas Co. v. Watkins, Tex.Civ.App., 82 S.W.2d 1079; Houston Funeral Home v. Boe, Tex.Civ. App., 78 S.W.2d 1091; Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ.App., 54 S.W.2d 190; John Dollinger, Jr., Inc., v. Horkan, Tex.Civ.App., 202 S.W. 978; Missouri K. & T. R. R. of Texas v. Seeger, Tex.Civ.App., 175 S.W. 713; Connecticut River Lumber Co. v. Olcott Falls Co., 65 N.H. 290, 21 A. 1090, 13 L.R.A. 826; 43 C.J.S., Injunctions, § 5b; 3 Kinney, Irri-

gation and Water Rights, 2d Ed., §§ 1532, 1607; 1 Farnham, Water and Water Rights, § 29.

Had the court denied the relief, all the parties to this suit would have been forced to abandon a known and proved formula for distribution of water.

■ We are further of the opinion that insofar as the injunction feature of the case is concerned, there is no fatal defect in parties. According to the recitations in the trial court's order, the factual and legal bases upon which relief by way of temporary injunction are predicated are that the parties to this suit "are owners of land riparian to the Rio Grande below the western boundary line of the County of Hidalgo; or else claim and have long used the waters under claim of lawful right, or are organized districts charged by law with the duty of diverting the normal flow of the Rio Grande for the use and benefit of owners of land riparian to the Rio Grande; or to water users who claim such right; and all plaintiffs and all defendants are entitled by law to their respective correlative shares of the normal flow of the Rio Grande below the western boundary of Hidalgo County and have long used and exercised such right * * *" and that all parties to the suit "are entitled to reasonable use of their correlative shares of the normal flow of the Rio Grande, with no controversy between them, other than as to the extent of their respective correlative shares * * *." The petition alleged that these correlative rights of plaintiffs had been destroyed by certain named defendants "taking advantage of the geographical location of their points of diversion to take more than their correlative shares of the available water of the Rio Grande, in disregard of law, local and international agreements, and their neighbor's rights" and appropriating far more than thoir fair share of the water; that such "lawbreaking water users have grown steadily bolder * * *"; that certain named districts and other diverters of water "in the Counties of Cameron and Hidalgo in a position to do so have diverted and taken far in excess of their legal, equitable, and reasonable shares of the waters available in the Rio Grande * * *." Allegations of like import appear throughout the petition.

■ Insofar as the temporary injunction is concerned, this is a suit by persons or entities claiming rights in and to the waters of a river against those who by reason of their geographical position on the upper reaches of the river are said to be taking substantially all of the flow thereof. It would seem on principle that the only indispensable parties to a suit for temporary restraint of the wrong complained of would be those who are being injured and those who are committing the wrong. Persons against whom no complaint of wrongdoing is lodged and against whom no injunctive relief is sought are not indispensable parties. Union Mill & Mining Co. v. Dangberg, C.C., 81 F. 73.

■ We believe it sound and in some cases imperative to make a distinction between temporary relief by way of a status quo injunction and final relief sought upon the merits. The injunction is an equitable device and controlled by equitable principles. Final relief may or may not be within the purely equitable jurisdiction of the court. The general rule as to parties (even in equity proceedings) is "that all persons materially interested in the subject-matter, ought to be made parties to the suit, * * * (but) It has been well observed, that the general rule, being established for the convenient administration of justice, ought not to be adhered to in cases, in which, consistently with practical convenience, it is incapable of application; for then it would destroy the very purpose for which it was established. The exceptions, therefore, turn upon the same principle, upon which the rule is founded. They are resolvable into this, either that the court must wholly deny the plaintiff the equitable relief, to which he is entitled, or that the relief must be granted without making other persons parties. The latter is deemed the least evil, whenever the court can proceed to do justice between the parties before it, without disturbing the rights or injuring the interests of the absent parties, who are equally entitled to its protection." South East

Nat. Bank v. Board of Education, 298 Ill. App. 92, 18 N.E.2d 584, 593, 594, quoting from Story's Equity Pleading (9th Ed.), §§ 76a, 96.

If this suit be considered one to settle and adjudicate the rights of all those who are entitled to the usufructory use of the waters of the Rio Grande, it may well be that other parties will have to be brought into the suit. The trial judge seems to have been of this opinion, as he directed the Master in Chancery to ascertain the identity of others who might be affected by or interested in these proceedings. This, however is not fatal to the temporary equitable relief granted. As above pointed out, the purpose of the status quo injunction is not to fix and settle the legal rights of the parties, but to maintain an existing situation, position or condition of affairs until a judicial tribunal may with orderliness proceed to a determination of such rights with some semblance of accuracy.

We have been cited to the case of Matagorda Canal Co. v. Markham Irr. Co., Tex.Civ.App., 154 S.W. 1176, in which no clear distinction is made as to temporary and permanent relief insofar as "parties" are concerned. The case cited, as compared to the one now before us, presents a comparatively simple situation as to the persons and parties affected. However, it is difficult to follow the reasoning which would prevent the issuance of a temporary order until all those having contracts with the irrigation company had been ascertained and made parties to the suit. The rule of the Matagorda Canal Company case was considered as one of limited application in Lakeside Irrigation Co. v. Kirby, Tex.Civ.App., 166 S.W. 715, and should not be applied so as to render a court helpless to afford proper temporary relief because of detailed and over-refined requirements as to parties. Furthermore, if it be necessary to a support of our holding, it might be pointed out that the Matagorda Canal Company case was not a "class suit." The case before us was purportedly brought under the provisions of Rule 42 of the Texas Rules of Civil Procedure. Well over 250 persons, corporations and politico-municipal organizations are named as parties. Four separate appellants' briefs have been filed herein, all representing numerous individuals and entities. The matters and issues involved were vigorously contested in the trial court and the conflicting views of the parties ably presented here. We hold the suit to be one properly brought within the provisions of Rule 42.

The plaintiff and defendant districts in this suit are either water improvement districts, Title 128, Ch. 2, Article 7622 et seq., Vernon's Ann.Civ.Tex. Stats. or water and control and improvement districts, Title 128, Ch. 3A, Article 7880-1 et seq., Vernon's Ann.Civ.Tex. Stats. Both forms of organization have directors elected by the resident taxpayers of the district and these constitute the governing boards of the municipal corporations. These organizations are responsible for the delivery of irrigation water to the lands within the district and in a suit of this character constitute an appropriate class representative of owners of lands therein. Richardson v. Kelly, Receiver, 144 Tex. 497, 191 S.W.2d 857; Zavala County Water Improvement Dist. No. 3, v. Rogers, Tex.Civ.App., 145 S.W.2d 919; Rank v. Krug, 90 F.Supp. 773, and the numerous authorities therein cited; 28 Am. Jur. 450, Injunctions, § 275; 39 Am.Jur. 886, 917, Parties, §§ 27, 44, 45.

We believe that the trial court has effectively met a pressing need by means of the equity arm of the court aided by a Master in Chancery. Rule 171 of the Texas Rules of Civil Procedure permits the appointment of a master "in exceptional cases, for good cause * * *." Such a master "shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity." Under the rule he is permitted to do or perform particular acts, and those acts are stated in the order appointing him, as discussed in our former opinion, 250 S.W.2d 941. By such means the court is continuing in operation sub-

stantially the same status among all water users that has existed for a long period of time prior to this controversy.

We hold that the trial judge did not abuse his discretion in granting the injunction complained of and his order is accordingly affirmed.

W. O. MURRY, Chief Justice (dissenting).

I do not concur in the opinion of the majority.

There can be no doubt but that the allegations of plaintiffs' petition presented a real emergency existing in the Lower Rio Grande Valley of Texas, due to the drought and the scant flow of water in the Rio Grande River, upon which so many people are dependent for water, not only for irrigation but also for domestic, municipal, industrial and other purposes.

The trial court first met this emergency by the granting of a temporary restraining order under the provisions of Rule 680, T.R.C.P., which could continue in force for a period of only ten days, unless renewed for a like period or extended by agreement of the parties, as is provided in said Rule 680. The court proceeded with a hearing upon the application for a temporary injunction, as is contemplated by the provisions of said Rule 680, but after hearing testimony for several days granted the temporary injunction herein appealed from by appellants.

The trial court by his findings shows that he did not determine the correlative rights of the various parties to this suit to divert water from the Rio Grande, but stated that this could only be done upon a hearing of the merits of the case. The court seems to base his temporary injunction upon a voluntary proration agreement entered into by some of the parties to this suit, which the court found was not binding upon the parties and was never intended to have any effect upon their various rights to divert water from the Rio Grande.

The record shows that many of the parties to the suit have been engaged in diverting water from the Rio Grande for many years and have valuable property rights in the beneficial use of the waters of the Rio Grande. Some of these rights are riparian rights, and some are non-riparian rights, based upon prescription arising from a long-time use of such waters. All of these rights are valuable property rights and some are undoubtedly prior to others, but the trial court did not take sufficient time to determine these property rights and their priorities before issuing a temporary injunction.

The trial court, by the provisions of its order, first seizes all water of Texas flowing in the Rio Grande below Rio Grande City, pendente lite, to be administered in trust for all riparian owners and *other water users* entitled to share in the *reasonable use* of such waters, under orders of the court, with *due respect to priorities as prescribed by law*. In order to administer such trust, O. E. Van Berg was appointed Master in Chancery, pendente lite, charged with the duty, among other things, of enforcing all rules and regulations as prescribed by the court. The court further provided that both plaintiffs and defendants shall be permitted to use and are limited to the use, except as otherwise set out, of waters of the normal flow of the Rio Grande in the proportion which the acreages for which they customarily divert water from the normal flow of the Rio Grande shall bear to the whole number of acres in the Counties of Cameron and Hidalgo for which such waters are customarily diverted. The Master is charged with the duty of seeing that each smaller user is accorded reasonable use of the waters of the Rio Grande, with priorities established by law.

The court then ordered the issuance of a temporary injunction directing all plaintiffs and defendants to cease and desist from diverting said waters, otherwise than in compliance with and according to the rules and regulations which are hereby, or which hereafter shall be prescribed by this court.

This injunction greatly disturbed, rather than preserved, the status quo. In the first place, it undertakes to appoint a river

master to control the use of the Texas share of the water flowing in the Rio Grande. This is unquestionably a delegation of judicial power. There is no legislation in this State authorizing such a procedure. Many of the states have such provisions, but in the absence of legislation authorizing such action a court has no authority to appoint such an administrator with judicial powers. Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641; Seagraves v. Green, 116 Tex. 220, 288 S.W. 417; Southwestern Oil Co. v. Wilson, 56 S.W. 429; Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301.

Next the order places all diverters of water from the Rio Grande on an equal footing and allows them a reasonable use of the water, subject to priorities prescribed by law, whether they be riparian users, appropriators, or whether they assert a prescriptive right to such use. It does not attempt to state what are the priorities prescribed by law, nor what is a reasonable use. The reasonable use of water does not apply between riparian users and appropriators. Miller & Lux v. Madera, 155 Cal. 59, 99 P. 502, 22 L.R.A.,N.S., 391. The record is also clear that it permits riparian water to be taken away from riparian users and turned over to non-riparian users. A prescriptive user of water never has priority over a riparian user, especially where the prescriptive user is down stream from the riparian user. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; Mud Creek Irrigation Agr. & Mfg. Co. v. Vivian, 74 Tex. 170, 11 S.W. 1078; Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733, 70 L.R.A. 964; Miller v. Madera, 155 Cal. 59, 99 P. 502.

I am further of the opinion that this order is void for uncertainty. It is clear that the proportion of the water of the Rio Grande belonging to Texas cannot be accurately determined. It is only guessed at by the court and the amount changes from time to time and day to day. The parties are allowed to make a reasonable use of the water, without any definition of what is a reasonable use. It is undetermined who has the prior right to the water, but the parties are required to respect priori-

ties. As above indicated, the only practical way such an order could possibly be enforced would be for the Master, Van Berg, to become a virtual dictator and arbitrarily permit each party to use a certain amount of water and for the court to punish every one who violates such orders, irrespective of what his legal rights might be. No court, in the absence of statutory authority, has a right to appoint such an administrator with such arbitrary authority. If the court could not determine the rights of the parties as to the use of the riparian water flowing in the Rio Grande, then how is the Master going to determine such right, except in an arbitrary manner, and how else is he going to determine priorities? Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301.

An injunction must be sufficiently certain and definite in its provisions so that a party may know, from the injunction itself, exactly what he is prohibited from doing, and so that a court can determine when such injunction has been violated. Rule 683, T.R.C.P. This must be determined from a reading of the injunction itself, and not by referring to other instruments such as rules and regulations prescribed and to be prescribed. Rule 683, supra.

It occurs to me that it is impossible to determine the correlative rights of riparian users from a common stream without having before the court all of such users. I doubt the right of the court to determine the correlative rights of riparian users of water of only a certain arbitrary section of a stream, such as from the western boundary of Hidalgo County to the mouth of the Rio Grande, when there are other riparian users on other sections of the same stream. Such relative rights can only be determined when all such users of the entire stream on the Texas side are made parties to the suit. But, aside from this, the amount of available water, according to the court's order, is to be determined by the Government gauge near Rio Grande City, but no attempt is made to bring into the suit riparian users down stream from this gauge who operate in Starr County.

The users in Hidalgo and Cameron Counties were ordered to cease and desist from using such water other than as they were permitted to do so under rules and regulations prescribed and to be prescribed by the court, while the users in Starr County were left free to divert water from such common stream, after it had been measured at Rio Grande City, without any restraint whatever.

The temporary injunction in this case being one which is mandatory in its nature and one which disturbs the status quo, could properly be issued only after a hearing at which the correlative rights of the parties, together with their priorities, had been determined. Ward County Water Imp. Dist. 2 v. Ward County, etc., Tex. Civ.App., 214 S.W. 490; James v. E. Weinstein & Sons, Tex.Com.App., 12 S. W.2d 959; Marrs v. R. R. Commission, 142 Tex. 293, 177 S.W.2d 941; 24 Tex. Jur. 121, §§ 86 and 88.

Further, I have serious doubt that this suit can be maintained as a class action. Plaintiffs below attempted to bring this suit as a class action and they attempted to represent many necessary parties who were users of water from the Rio Grande, based upon what must necessarily be different claims—some as riparian users and some as non-riparian users. Plaintiffs were water districts not shown to have any riparian right to use water from the Rio Grande. It would seem that under such circumstances there would necessarily have to be a conflict of interest between plaintiffs and the other parties they undertook to represent as a class. Under such circumstances a class suit cannot be maintained. McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015; Knioum v. Slattery, Tex.Civ.App., 239 S.W.2d 865; Rule 42, T.R.C.P.; Giordano v. Radio Corp. of America, 3 Cir., 183 F.2d 558; Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182; Schatte v. International Alliance of Theatrical Stage Emp. and Moving Picture Mach. Operators of U. S. and Canada, 9 Cir., 183 F.2d 685.

I think the temporary injunction in this case might well have been refused, because its enforcement will require continuous judicial supervision and a hearing on each violation thereof. 24 Tex.Jur. 127, § 89.

For the above reasons and others which I shall not attempt to set forth here, I respectfully dissent from the opinion of the majority.