**The SPEEDMAN OIL COMPANY et al.,**
**Appellants,**

v.

**DUVAL COUNTY RANCH COMPANY, INC.,**
**Appellee.**

**No. 15153.**

Court of Civil Appeals of Texas,
San Antonio.

June 27, 1973.

Rehearing Denied Jan. 30, 1974.

Lev Hunt, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellants.

Stiernberg, Skaggs & Koppel, Harlingen, for appellee.

CADENA, Justice.

Defendants, the Speedman Oil Company, Fred M. Speed and D. A. Mansheim, seek dissolution of a temporary injunction restraining them from pumping, flowing or producing any oil or gas from leases located on land owned by plaintiff, Duval County Ranch Company.

Plaintiff's suit seeks cancellation of an oil and gas lease which has been assigned to defendants by the original lessee, and recovery of $2,000,000 actual damages and a like amount as exemplary damages because of alleged permanent injury to the surface of plaintiff's land as a result of defendants' operations. The application for temporary injunction, filed separately, alleges: (1) Defendants have operated production equipment on plaintiff's property in such a careless and unworkmanlike manner, and with such reckless disregard of plaintiff's rights as to cause irreparable injury to the surface of plaintiff's land by allowing oil and petroleum to run out of storage tanks onto the surface in large pools and streams. (2) Defendants have

allowed pipelines and other production equipment to deteriorate to the extent that petroleum, salt water, sludge and other noxious materials flow freely and in large quantities onto the surface of plaintiff's land. (3) Defendants have willfully and intentionally caused petroleum, brine, drilling fluids and other noxious substances to be pumped and jetted from production equipment directly onto the surface. (4) The unrestrained flow of such substances onto the surface has been so extensive that vegetation has been permanently destroyed and the land has been permanently damaged to such an extent that portions of the land are no longer suitable for plaintiff's cattle operation or for any other purpose.

Plaintiff's lands are subject to various oil and gas leases executed in favor of several major oil companies which operated under such leases for some 30 or 40 years, and then made partial assignments to various independent producers. Defendants are the partial assignees of the interest of Humble Oil and Refining Company, one of the original lessees. This litigation involves defendants' operations on six tracts of land known as the "C," "D," "F," "G," "L," and "P" leases.

■ We consider first the contention, embodied in defendants' sixth point of error, that the temporary injunction was improperly granted because certain royalty owners, lienholders and others having an interest in the land and in defendants' operations were not joined as parties. We assume, without deciding, that, at least insofar as plaintiff's prayer for cancellation of the lease is concerned, some, if not all, of such persons would be indispensable parties. However, with respect to the prayer for interlocutory injunctive relief, plaintiff's pleadings and the evidence establish that plaintiff seeks to enjoin only wrongful conduct of the defendants who are now before us and whose conduct is solely responsible for plaintiff's claimed injury.

■ A person whose valuable property rights require protection pending final determination of the merits of a controversy need not join all parties whose presence would be indispensable to the granting of final relief before he can obtain temporary orders preserving his rights. Littlejohn v. Finder, 348 S.W.2d 237 (Tex.Civ.App.—San Antonio 1961, no writ). As this Court pointed out in Hidalgo County Water Improvement District No. 2 v. Cameron Water Control & Improvement District No. 5, 253 S.W.2d 294, 299–300 (1952, writ ref'd n. r. e.), "Persons against whom no complaint of wrongdoing is lodged and against whom no injunctive relief is sought are not indispensable parties [to a proceeding for temporary injunction] . . . [I]t may well be that other parties will have to be brought into the suit . . . This, however is not fatal to the temporary equitable relief granted."

Feldman v. Costa, 171 S.W.2d 200 (Tex. Civ.App.—Dallas 1943, writ ref'd w. o. m.), and Davis v. Carothers, 335 S.W.2d 631, (Tex.Civ.App.—Waco 1960, no writ), relied on by defendants, are not persuasive. In *Feldman*, the trial court refused to grant a temporary injunction, and this refusal was affirmed because: (1) plaintiff had failed to join proper parties; and (2) plaintiff had failed to show irreparable injury. The refusal of the temporary injunction was, of course, proper if, in fact, plaintiff had failed to show irreparable injury. But, insofar as the holding to the effect that a temporary injunction cannot issue if proper, as distinguished from indispensable, parties are not joined is concerned, the holding is patently erroneous. Lack of merely proper parties does not justify the reversal of even a final judgment. 44 Tex.Jur.2d, *Parties*, Section 86. If the *Feldman* opinion reflects a misuse of the term "proper parties" when what is meant is "indispensable parties," then the opinion can only be classified as a misapplication of the law. See Lowe v. City of Del Rio, 132 Tex. 111, 122 S.W.2d 191, 192 (1938), where the Supreme Court, after re-

versing a *final* judgment for lack of indispensable parties, expressly ordered that the temporary injunction granted by the trial court remain in effect pending a final determination of the controversy on the merits. This is clearly a holding to the effect that the absence of parties whose presence is essential to the final determination of a controversy does not preclude the granting of temporary relief.

*Davis* is simply not in point, since the judgment there reversed because of absence of indispensable parties was a final judgment granting permanent injunctive relief.

Defendants' sixth point is overruled.

■■■ Defendants' seventh point, in which it is claimed that the temporary injunction was improperly granted because plaintiff is not entitled to possession of the surface, is also without merit. This contention is based on the fact that plaintiff had executed a lease, still in effect, of the surface to a third party. However, plaintiff's pleadings, supported by evidence, show permanent injury to the freehold or reversion. It is well settled that the cause of action for permanent damage to the freehold or reversion arises in favor of the landlord, and not in favor of the tenant. Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S.W. 228 (1891); West Central Drilling Co. v. Malone, 219 S.W.2d 601 (Tex.Civ.App.—Eastland 1949, no writ).

Defendants' fourth and fifth points present "no evidence" and "insufficient evidence" questions, respectively. In passing on these points we will apply the ". . . usual rules, i. e., looking only to the favorable evidence in passing upon the no evidence points, and the entire record in passing upon the insufficiency . . . points." St. Louis Southwestern Railway Company v. Lyons, 486 S.W.2d 890, 892 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.).

It is undisputed that there was spillage of oil and salt water on the surface of plaintiff's land; that defendants' equipment is badly deteriorated and has not been properly maintained; that defendants' operation is a "poor boy operation," with the flow pipes being "in real bad condition" and no longer suitable "for flow use," having "lived out its life"; that the flow lines have to be replaced; and that defendants' operation is of such a marginal nature that they cannot afford to make the necessary repairs or purchase new equipment. There was evidence not only of leaking pipes, but of leaking well heads, leaking pumps, leaking storage tanks, leaking engines, leaking stuffing boxes, leaking valves and leaking risers. One witness testified that if the pipes were not replaced, the number of "bad leaks" would increase. There was testimony of large oil spills and the burning of oil which had been allowed to leak onto the surface, creating a large pool, with the result that the vegetation in the area had been killed and had not grown back. There was testimony concerning the finding of dead wild life, principally "oil-soaked" birds, as well as some dead cattle near the oil spillages. Defendants' maintenance of its equipment was described by one witness as being "very below average," and their entire operation was described as "way below normal." There is also testimony to the effect that "in a good operation" oil leaks are "very unusual."

There is, in short, evidence of a long and continuous course of oil leaks and spillage resulting from the use of deteriorated equipment without adequate maintenance.

Defendants' "no evidence" point is overruled.

■■■ In connection with defendants' point challenging the factual sufficiency of the evidence, it must be borne in mind that we are reviewing the granting of a temporary, rather than a final or permanent, injunction. To justify the granting of a tem-

porary injunction it is not necessary that the applicant establish, by a preponderance of the evidence, the existence of facts which would justify a final judgment in his favor. It is only necessary that he plead a cause of action and present testimony showing a probable right to the relief he ultimately seeks and that, if defendant is not restrained, plaintiff will suffer probable injury in the interim. Sun Oil Co. v. Whitaker, 424 S.W.2d 216 (Tex. 1968). Present a showing of probable right and probable injury, the trial court, according to *Whitaker*, is clothed with broad discretion in determining whether to grant a temporary injunction, and its action will be set aside only if the reviewing court is convinced that the trial judge's action represents a clear abuse of discretion. It seems clear that probable right and probable injury can be established by evidence which falls short of establishing the elements of plaintiff's cause of action by a preponderance of the evidence. If this is not so, than all of the talk in the opinions about the trial court's "broad discretion" and the limited scope of appellate review of factual questions in temporary injunction cases is meaningless, and the burden on one seeking temporary injunctive relief is as heavy as that which must be borne by one seeking a final judgment on the merits.

■ An "insufficient evidence" point in an appeal from the issuance of a temporary injunction, then, must be viewed as merely asserting that, considering the entire record, the trial court clearly abused its discretion in granting the temporary relief.

■ Defendants presented testimony which contradicts the testimony outlined in connection with defendants' "no evidence" point on the question of the frequency, extent and harmful effects of the leaks and spillages. There is also testimony indicating that leaks are inevitable in the production of oil and gas; that defendants' equipment, although old, was reasonably ade-

quate; and that defendants' operation compared favorably with that of other producers, including major oil companies. However, after considering the entire record, we cannot say that the trial court abused its discretion in concluding that plaintiff showed a probable right to damages and the cancellation of the lease because of defendants' negligent operation and that it would suffer probable injury, in the form of continued pollution of the surface of its land, during the period which must necessarily elapse before a final decision on the merits can be had.

However, what we have said concerning abuse of discretion applies only to leases F, L and P. As we view the record, all of the testimony, including the photographs introduced in evidence, concerning specific conditions relates to conditions on these three tracts of land. There is general testimony concerning oil and salt water leaks and spills which, perhaps, may be interpreted as being descriptive of conditions on all six leases. But, even under the relaxed rules applicable to appellate review of temporary injunction proceedings, we do not feel that this general testimony, which does not purport to describe specific conditions on any specific tract, warrants an order halting all production on leases C, D and G.

■ Defendants' first point challenges the granting of temporary relief on the ground that the interlocutory injunction alters, rather than preserves, the status quo. In presenting this ground for dissolution of the injunction, defendants maintain that the status quo to be preserved consists of the method in which they were operating prior to the institution of plaintiff's suit.

The trial court found that defendants' operations resulted in an unwarranted invasion of plaintiff's rights as owner of the surface. A wrongful invasion of property rights has not, as far as we know, been raised to the dignity of a status quo which deserves preservation. Rather, an unwarranted invasion of property does not create

a status quo which must be protected pending a final trial. Patterson v. City of Bowie, 295 S.W.2d 676 (Tex.Civ.App.—Fort Worth 1956, no writ).

By their second point, defendants insist that the temporary injunction cannot stand, since it restrains defendants from doing that which they have a right to do. This argument is based on the well recognized rule that a lessee under an oil and gas lease has the right to take the minerals and, in exercising this right, may use as much of the surface as is reasonably necessary. While our courts recognize that the oil and gas estate is the dominant tenement in the sense that use of as much of the premises as is reasonably necessary to remove the minerals is authorized, the rights implied in favor of the mineral estate must be exercised with due regard for the rights of the owner of the surface, or servient, estate. Humble Oil & Refining Co. v. Williams, 420 S.W.2d 133 (Tex. 1967); Keeton & Jones, Tort Liability and the Oil and Gas Industry, 35 Tex.L.Rev. 1 (1956). It is not ordinarily contemplated that the lessee, in exercising his rights, will destroy or substantially impair the use of the surface for agricultural and other purposes. Acker v. Guinn, 464 S.W.2d 348 (Tex.1971). It follows that if the surface owner shows that the lessee is guilty of negligence or that the damage to the surface exceeds that which is reasonably necessary to the exploitation of the minerals, the lessee has acted unreasonably and has exceeded his rights.

In this case there is evidence of negligent conduct on the part of defendants in the use of equipment which had outlived its usefulness and had become so deteriorated that it was no longer fit for the use to which it was being put. We cannot say that the trial court abused its discretion in concluding that defendants' "poor boy operation" resulted in the infliction of damage to the surface which exceeded that which was reasonably necessary in order to produce minerals.

There is no merit to defendants' third point which embodies the argument that temporary injunctive relief in this case is improper because plaintiff has, and actually asserts, an adequate remedy at law by way of damages. There is evidence of a long continued history of oil leaks and spillage resulting from the use of deteriorated equipment which has not been properly maintained. Where the trespass or injury to land is continuous, or frequently recurring, constantly adding to the damage, the legal remedy is inadequate because a jury cannot fix upon a time when the wrong may be said to be complete. Hastings Oil Co. v. Texas Company, 149 Tex. 416, 234 S.W.2d 389, 398 (1950); 42 Am. Jur.2d, Injunctions, Section 49, p. 789. Conduct which results in destruction, or a serious change in the nature, of property either physically or in the character in which it is being used does irreparable injury and justifies interlocutory injunctive relief. County of Harris v. Southern Pacific Transportation Company, 457 S.W.2d 336 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); 43 C.J.S. Injunctions § 23(b)(2), p. 448. After hearing the testimony, the trial court concluded that plaintiff's allegations of irreparable injury are probably true. Under these circumstances, the granting of the temporary injunction was not beyond the discretion vested in the trial court.

We do not base our conclusion relating to irreparable injury on the provisions of Article 4642(4), Vernon's Tex.Rev.Civ.Stat. Ann., urged upon us by plaintiff as supporting the granting of the temporary injunction by the trial court. That legislative pronouncement is to the effect that injunctive relief may be granted where "irreparable injury" to real estate is threatened, ". . . irrrespective of any legal remedy at law." We decline to attempt to interpret this statutory provision,[1] since we

1. The language of the statute creates interpretative problems not easily resolved. Irrep-

arable injury is often defined as ". . . 'an injury of such a nature that the injured

have concluded that the remedy at law available to plaintiff is not adequate.

■ Defendants' eighth point of error presents the argument that the trial court could not properly grant a temporary injunction in this case because plaintiff had not sought relief from the Railroad Commission. This contention is based on the theory that, since the Railroad Commission has been vested with "primary jurisdiction" over oil and gas matters, judicial relief in cases involving the production of oil and gas may not be sought until the administrative remedy of resort to the Railroad Commission has been exhausted. This theory was urged upon, and rejected by, our Supreme Court in Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411 (1961). Defendants cite no decision in support of their contention.

Defendants' ninth point complains of the trial court's refusal to " . . . suspend the temporary injunction pending appeal," while their tenth point advances essentially the same grievance by challenging the refusal of the trial court to " . . . set an amount for a supersedeas bond."

While admitting in what they refer to as the ordinary case involving the issuance of a temporary injunction, the question of whether the interlocutory order shall be suspended or superseded pending appeal is left to the discretion of the trial judge,[2] defendants argue that the case before us is not an ordinary case because the injunction here does not preserve the status quo but, instead, substantially alters it, so that it is, in effect, a permanent injunction. The injunction is, by its terms, temporary in nature. We have already held that the injunction does not alter the status quo. Since defendants' argument is based on the

contention that the injunction in this case must be considered as permanent in nature, an argument which we find unpersuasive, and since they do not argue that the trial court's refusal to suspend the order or grant supersedeas was otherwise arbitrary, their ninth and tenth points of error must be overruled.

Although defendants filed no pleadings showing an intention to reply on the doctrines of "clean hands" and comparative hardship, and their brief contains no points specifically calling our attention to such doctrines, their brief does contain references to these doctrines, and calls our attention to portions of the evidence which, they insist, call for the application of these rules.

■ There is evidence to the effect that plaintiff, in the course of conducting its own oil and gas operations on its own land, has experienced leaks and spillages which have resulted in surface damage comparable, at least in some instances, to that resulting from defendants' operations. We do not understand the doctrine of clean hands to mean that if a plaintiff causes injury to portions of his land he thereby invests a defendant with the right to cause similar injury to other portions of plaintiff's land.

With respect to the doctrine of comparative harm or, as it is sometimes called, "balancing the equities," the evidence, as already pointed out, furnishes no basis for determining the extent of injury which will result to defendants from the granting of the temporary injunction. At the very least, it can be said that the record before us does not justify the conclusion that the trial court committed an abuse of discretion by refusing to find that there is a

---

party cannot be adequately compensated therefor in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard.' " Southwestern Chemical & Gas Corp. v. Southeastern Pipe Line Co., 369 S.W.2d 489, 492 (Tex.Civ.App. ——Houston, 1963, no writ). The statutory language, if literally interpreted, embodies a

pronouncement to the effect that where there is threatened an injury to land for which there is no adequate legal remedy, an injunction may issue even if there is an adequate legal remedy.

2. See Rule 385(d), Texas Rules of Civil Procedure.

probability of greater damage to defendants if the writ be granted than that which plaintiff will suffer if the injunction be denied. Nor does the evidence compel the conclusion that the social utility of defendants' marginal operation outweighs the social value of protecting plaintiff's interests.

Finally, defendants complain of the action of the trial court in setting the amount of the temporary injunction bond at only $5,000.

 Defendants' argument that the amount of the bond is insufficient is not unpersuasive. However, the record furnishes no reliable information which would guide us in setting the proper amount. In any event, the failure to require a bond in an insufficient amount does not affect the validity of the injunction. Lindley v. Easley, 59 S.W.2d 927, 929 (Tex. Civ.App.—Eastland 1933, no writ). In Mansfield v. Ramsey, 196 S.W. 330 (Tex. Civ.App.—Beaumont 1917, no writ), it was said that defects in injunction bonds are waived unless they are taken advantage of by motion to correct the defect or to dissolve the injunction, and that the insufficiency of the amount of the bond cannot be urged as a ground for reversal. 196 S.W. at 332, 333. Both *Mansfield* and *Lindley* were cited with approval by our Supreme Court in Ex parte Coffee and Holley, 160 Tex. 224, 328 S.W.2d 283, 292 (1959), where it was held that a defective bond which, upon motion, could have been amended or corrected to afford full protection will support a writ of temporary injunction. As pointed out by the Supreme Court in Oil Field Haulers Ass'n v. Railroad Comm., 381 S.W.2d 183, 190 (1964), if defendants " . . . regard the bond as insufficient for their protection they may yet apply to the trial court to have it made sufficient." Defendants' eleventh point, then, presents no ground for reversal.

The judgment of the trial court enjoining production on leases C, D and G is reversed and the temporary injunction, insofar as it restrains production on those tracts, is dissolved.

Insofar as the injunction relates to leases F, L and P, the judgment of the trial court is affirmed. Nothing herein prevents defendants from seeking a dissolution of the injunction halting production on leases F, L and P upon a showing that they have done what is necessary to permit the resumption of operations on those tracts without unreasonable injury to the surface.

One half of the costs are taxed against plaintiff, and the other one half of the costs are taxed against defendants.