COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-339-CV
 
  
CHARLES 
GLEN HYDE, HYDE-WAY,                                      APPELLANTS
INC., 
AVIATION UTILITIES
SERVICES, 
INC., AND TEXAS
AIR 
CLASSICS
 
V.
 
JIMMY 
RAY AND TRENT CRAGIN                                            APPELLEES
 
  
------------
 
FROM 
THE 393RD DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellees, 
Jimmy Ray (Ray) and Trent Cragin (Cragin), filed this suit against Appellants, 
Charles Glen Hyde, Hyde-Way, Inc., Aviation Utilities Services, Inc., and Texas 
Air Classics, asserting claims of, among other things, breach of contract and 
tortious interference, as well as requesting, among other things, that 
Appellants be temporarily enjoined from withdrawing funds derived from fees paid 
to obtain licenses for the use of the runways and taxiways at Northwest Regional 
Airport and from interfering with Ray’s or Ray’s tenants’ use of the 
runways and taxiways at Northwest Regional Airport. The trial court granted the 
temporary injunction. In three issues, Appellants argue that the trial court 
abused its discretion by granting the temporary injunction. Because we hold that 
the trial court did not abuse its discretion, we affirm the trial court’s 
order.
Background 
Facts
        Texas 
Air Classics owns Northwest Regional Airport’s runways and taxiways, which it 
bought from Hyde-Way. When Hyde-Way bought the airport, it also bought a large 
portion of the adjoining property for development. In 1983, Hyde-Way filed deed 
restrictions and a license agreement with the Denton County Clerk for the 
property that it developed. Ray, Cragin, and approximately 184 other individuals 
own hangars near the airport. Appellees’ hangars are part of the property 
developed by Hyde-Way. Ray initially bought the hangar now owned by Cragin in 
1991 and converted it to a residential apartment. After selling his apartment to 
Cragin in 2002, Ray bought another hangar.
        Pursuant 
to the license agreement attached to the deed restrictions, the hangar owners 
may pay a fee to obtain a license to use the runways and taxiways. The license 
fee is collected to provide “for the maintenance, repair, construction and 
reconstruction of the airport facilities” and “a reasonable payment to the 
Licensor for his necessary services and time.” The deed restrictions encourage 
improvements on the property but require plans and specifications of the 
improvements to be submitted to and approved in writing by Hyde-Way. The 
restrictions provide that the hangars cannot be used for residential purposes. 
When Hyde-Way sold the airport to Texas Air Classics, it retained exclusive 
right to collect the license fee and grant access to the runways and taxiways as 
set forth in the license agreement. Thus, Hyde-Way controls the license fee 
funds and claims ownership in the funds. Hyde-Way never withdrew any of the 
funds as compensation for services and time until this suit commenced, at which 
time it withdrew $25,000.
        Appellees 
are both using their hangars for residential purposes. Ray was also observed 
digging up the taxiway and pouring concrete in front of his hangar, blocking the 
taxiway from being used. At no time did Ray submit or receive approval for this 
activity. Additionally, Ray had his contractor dump the excess dirt on Hyde’s 
property, blocking the drainage. Because Hyde-Way believed that these actions 
violated the deed restrictions, Hyde-Way informed Appellees that the violations 
terminated the license and that neither they nor their tenants could use the 
runways and taxiways any longer. After attempting to use the runways and 
taxiways and being prevented from doing so by Hyde-Way, Appellees filed for an 
injunction to keep Appellants from preventing their use of the runways and 
taxiways and also to prevent Appellants from withdrawing any of the license fee 
funds.
        Appellees 
originally sued Appellants to, among other things, enjoin them from 
disconnecting water to their hangars. The trial court granted a temporary 
injunction regarding the water, which was appealed to this court.[2]  This court abated the case until the hearing before 
the water commission has been concluded and the commission has made findings 
relevant to that issue. The temporary injunction at issue in this appeal (the 
second temporary injunction) enjoins Appellants from accepting Ray’s license 
fee, from interfering with Ray’s and Ray’s tenants’ use of the runways and 
taxiways, and from withdrawing more than the ordered amount from the license fee 
funds.
        Appellants 
now argue that the trial court abused its discretion by granting the second 
temporary injunction because necessary and indispensable parties were not joined 
in the suit, the injunction was based upon an improper revising of the governing 
license instrument, and the undisputed evidence established that Ray and Ray’s 
tenants became trespassers.
Standard of 
Review
        The 
sole issue before the trial court in a temporary injunction hearing is whether 
the applicant may preserve the status quo of the litigation's subject matter 
pending trial on the merits.[3]  An applicant 
must plead and prove three elements to obtain a temporary injunction: (1) a 
cause of action against the defendant; (2) a probable right to the relief; and 
(3) a probable, imminent, and irreparable injury in the interim.[4]  An injury is irreparable if the injured party cannot 
be adequately compensated in damages or if the damages cannot be measured by any 
certain pecuniary standard.[5]
        The 
applicant for a temporary injunction is not required to establish that he or she 
will prevail upon a final trial.[6]  The merits 
of the applicant's suit are not presented for review.[7]  
Our review is strictly limited to whether the trial court abused its discretion 
in granting the temporary injunction.[8]  We may 
not substitute our judgment for that of the trial court by vacating or modifying 
an injunction simply because we would have decided otherwise.[9]  
An abuse of discretion does not occur as long as there is some evidence to 
support the trial court’s decision.[10]  
Furthermore, an abuse of discretion does not exist where the trial court bases 
its decision on conflicting evidence.[11]  As 
the reviewing court, we must draw all legitimate inferences from the evidence in 
a manner most favorable to the trial court's order granting a temporary 
injunction and determine whether the order was so arbitrary as to exceed the 
bounds of reasonable discretion.[12]
Necessary and 
Indispensable Parties
        We 
first consider Appellants’ issue that the temporary injunction was improperly 
granted because the remaining 184 property owners and the members of the 
Northwest Regional Property Owners Association having an interest in the deed 
restrictions and in Appellants’ use of the licensing funds are necessary and 
indispensable parties that were not joined.[13]  
We are concerned that, at least insofar as Appellees’ request for declaratory 
judgment in the underlying lawsuit is concerned, some, if not all, of such 
persons would be indispensable parties.[14]  But 
courts have held that a person with rights to be preserved pending final trial 
need not join all necessary parties before obtaining interim orders, such as a 
temporary injunction.[15]  “Persons against 
whom no complaint of wrongdoing is lodged and against whom no injunctive relief 
is sought are not indispensable parties to a proceeding for temporary 
injunction.  It may well be that other parties will have to be brought into 
the suit. This, however, is not fatal to the temporary equitable relief 
granted.”[16]
        In 
Lowe v. City of Del Rio, the Texas Supreme Court, after reversing a final 
judgment for lack of indispensable parties, expressly ordered that the temporary 
injunction granted by the trial court remain in effect pending a final 
determination of the controversy on the merits.[17]  
This is clearly a holding that the absence of parties whose presence is 
essential to the final determination of a controversy does not preclude the 
granting of temporary relief.[18]
        Thus, 
on appeal of a preliminary matter, such as the issuance of this temporary 
injunction, the question of necessary and indispensable parties is not reached.[19]  Appellees’ pleadings and the evidence establish 
that Appellees seek to temporarily enjoin only the allegedly wrongful conduct of 
Appellants, who are now before us and whose conduct is solely responsible for 
Appellees’ claimed injury.[20]  Therefore, we 
overrule Appellants’ first issue.
Temporary 
Injunction Elements
        To 
obtain a temporary injunction, an applicant must plead and prove the absence of 
an adequate remedy at law; probable, imminent, and irreparable injury in the 
interim; and probable right to recover on the merits.[21]  
We construe Appellants’ second and third issues as challenges to Appellees’ 
probable right to recover on the merits.
Probable Right to Recover
        Appellants’ 
second issue challenges Appellees’ probable right to recover on any claim 
regarding the withdrawal of money from the license fee fund. Accordingly, they 
contend the trial court erred in issuing the second temporary injunction 
regarding the challenged expenditures. Appellants contend several provisions of 
the license contract expressly permit them to expend unspecified amounts of 
funds from the license fees to Hyde-Way as management compensation, even though 
Hyde-Way holds equitable title to the funds. While the findings of the trial 
court read much like an order of declaratory judgment, we are restrained from 
reviewing more than the temporary injunction that is before us on interlocutory 
appeal.[22]  We therefore may not examine the 
merits of the declaratory judgment action brought by Appellees.  After 
reviewing the record, we determine that Appellees have sufficiently demonstrated 
a probable injury and a probable right to recovery for the purposes of this 
temporary injunction.[23]
        The 
expression “probable right to recover” is a term of art; it does not imply 
any kind of determination that becomes the law of the case, and the district 
court did not, by its determinations, find the truth and apply the law based on 
“probabilities” in the meaning that word has in ordinary usage.[24] Instead, concerning both the facts and the law, 
Appellees were only required to show “that a bona fide issue exists as to 
[their] right to ultimate relief.”[25]  That 
is, Appellees were required only to adduce evidence that tends to support their 
right to recover on the merits.[26]
        We 
hold the trial court reasonably concluded that Appellees showed a probable right 
of recovery. The contract documents were undisputed by the parties in the 
evidentiary hearing.  Unless the contracts authorize Appellants to expend 
the money in lump sum for twenty years of work, Appellants are entirely without 
any contractual authority to withdraw the money for that purpose.
        The 
contract provisions urged by Appellants are quite general.  They do not 
explicitly declare whether Appellants may expend the funds in a large lump sum, 
as Appellants have done.  The contract documents do not give Appellants 
that authority in explicit terms.  If the authority exists, it must be in 
consequence of a construction given the documents by the court after final 
hearing as to the intentions of the parties.  Appellees showed the 
existence of a bona fide issue; no more was required.  Therefore, the trial 
court did not abuse its discretion.  We overrule Appellants’ second 
issue.
        Appellants’ 
third issue challenges Appellees’ probable right to recover from a breach of 
the license agreement or tortious interference.  Appellants argue that 
Appellees were trespassers on the runway and thus they did not have a probable 
right to recover on the merits of their claims in the underlying lawsuit of 
breach of the license or tortious interference.
        The 
license agreement does not explicitly state that a violation of the deed 
restrictions terminates the license.  Although, upon trial on the merits, 
it may be found that Appellees did in fact violate the deed restrictions and 
should be penalized, neither the deed restrictions nor the license agreement 
clearly states that termination of the license is the penalty for such a 
violation.  Again, if the authority for termination exists, it must be in 
consequence of a construction given the documents by the court after final trial 
on the merits.[27]  Because bona fide issues 
exists regarding Appellants’ ability to terminate the license for deed 
restriction violations, we hold that the trial court did not abuse its 
discretion by finding that Appellees have a probable right to recover for 
purposes of maintaining the status quo until trial on the merits.  We 
overrule Appellants’ third issue.
Conclusion
Having 
overruled Appellants’ issues, we affirm the trial court’s order.

 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
  
  
PANEL 
A:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.
DELIVERED: 
June 10, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Hyde v. Ray, No. 02-03-123-CV.
3.  
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Walling v. 
Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993); Mabrey v. SandStream, Inc., 
124 S.W.3d 302, 308–09 (Tex. App.—Fort Worth 2003, no pet.).
4.  
Butnaru, 84 S.W.3d at 204; Walling, 863 S.W.2d at 57; Mabrey, 
124 S.W.3d at 309.
5.  
Butnaru, 84 S.W.3d at 204; Canteen Corp. v. Republic of Tex. Props., 
Inc., 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ).
6.  
Butnaru, 84 S.W.3d at 204 (citing Sun Oil Co. v. Whitaker, 424 
S.W.2d 216, 218 (Tex. 1968)); Walling, 863 S.W.2d at 58; Mabrey, 
124 S.W.3d at 309.
7.  
Mabrey, 124 S.W.3d at 309; Universal Health Servs. Inc. v. Thompson, 
24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.); Birnbaum v. Alliance 
of Am. Insurers, 994 S.W.2d 766, 783 (Tex. App.—Austin 1999, pet. denied) 
(noting that appeal from temporary injunction may not be used to obtain advance 
ruling on merits), abrogated on other grounds by In re Bass, 
113 S.W.3d 735 (Tex. 2003) (orig. proceeding).
8.  
See Butnaru, 84 S.W.3d at 204; Mabrey, 124 S.W.3d at 309; Gen. 
Fin. Servs., Inc. v. Practice Place, Inc., 897 S.W.2d 516, 519 (Tex. 
App.—Fort Worth 1995, no writ).
9.  
Mabrey, 124 S.W.3d at 309; Miller Paper Co. v. Roberts Paper Co., 
901 S.W.2d 593, 598 (Tex. App.—Amarillo 1995, no writ); see also Butnaru, 
84 S.W.3d at 211.
10.  
Butnaru, 84 S.W.3d at 211; Mabrey, 124 S.W.3d at 309.
11.  
Mabrey, 124 S.W.3d at 309.
12.  
Id.; Bell v. Tex. Workers Comp. Comm'n, 102 S.W.3d 299, 302 (Tex. 
App.—Austin 2003, no pet.); Rugen v. Interactive Bus. Sys., Inc., 864 
S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ); Bertotti v. C.E. Shepherd 
Co., 752 S.W.2d 648, 651 (Tex. App.—Houston [14th Dist.] 1988, no writ).
13.  
See Tex. Civ. Prac. & Rem. 
Code Ann. § 37.006(a) (Vernon 1997); Tex. Prop. Code Ann. § 201.010 (Vernon 
2000); Tex. R. Civ. P. 39.
14.  
See Tex. Civ. Prac. & Rem. 
Code Ann. § 37.006(a); Tex. Prop. 
Code Ann. § 201.010; Tex. R. Civ. 
P. 39.
15.  
Crain v. Firemen's & Policemen's Civil Serv. Comm’n of City of Fort 
Worth, 495 S.W.2d 20, 24 (Tex. App.—Fort Worth 1973, writ ref’d n.r.e.), 
disapproved on other grounds by Firemen’s & Policemen’s Civil Serv. 
Comm’n of City of Fort Worth v. Williams, 531 S.W.2d 327 (1975); Speedman 
Oil Co. v. Duval County Ranch Co., Inc., 504 S.W.2d 923, 926–27 (Tex. 
App.—San Antonio 1973, writ ref’d n.r.e.); Littlejohn v. Finder, 348 
S.W.2d 237, 239 (Tex. App.—San Antonio 1961, no writ); Temple ISD v. 
Proctor, 97 S.W.2d 1047, 1051 (Tex. App.—Austin 1936, writ ref’d).
16.  
Speedman Oil Co., 504 S.W.2d at 926; Hidalgo County Water Improvement 
Dist. No. 2 v. Cameron County Water Control & Improvement Dist. No. 5, 
253 S.W.2d 294, 299–300 (Tex. App.—San Antonio 1952, writ ref'd n.r.e.).
17.  
122 S.W.2d 191, 192 (Tex. 1938); Hidalgo County Water Improvement Dist. No. 2, 
253 S.W.2d at 299–300.
18.  
Hidalgo County Water Improvement Dist. No. 2, 253 S.W.2d at 299.
19.  
See Brooks v. Expo Chem. Co., 576 S.W.2d 369, 370 (Tex. 1979); Rogers 
v. Howell, 592 S.W.2d 402, 403 (Tex. App.—Dallas 1979, writ ref’d n.r.e.); 
Charter Med. Corp. v. Miller, 547 S.W.2d 77, 78 (Tex. App.—Dallas 1977, 
no writ).
20.  
See Speedman Oil Co., 504 S.W.2d at 926.
21.  
Butnaru, 84 S.W.3d at 204; Walling, 863 S.W.2d at 57; Mabrey, 
124 S.W.3d at 309.
22.  
See Tex. Alcoholic Beverage Comm'n v. Amusement & Music Operators of 
Tex., Inc., 997 S.W.2d 651, 658 (Tex. App.—Austin 1999, pet. dism’d 
w.o.j.).
23.  
See id.
24.  
183/620 Group Joint Venture v. SPF Joint Venture, 765 S.W.2d 901, 904 
(Tex. App.—Austin 1989, writ dism’d w.o.j.).
25.  
Id.
26.  
Id.
27.  
See id.