Charles Glen Hyde, Hyde-Way, Inc. Aviation Utilities Services, Inc., and Texas Air Classics v. Jimmy Ray and Trent Cragin

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-339-CV

CHARLES GLEN HYDE, HYDE-WAY, APPELLANTS

INC., AVIATION UTILITIES 

SERVICES, INC., AND TEXAS 

AIR CLASSICS 

V.

JIMMY RAY AND TRENT CRAGIN APPELLEES

------------

FROM THE 393
RD
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

 Appellees, Jimmy Ray (Ray) and Trent Cragin (Cragin), filed this suit against Appellants, Charles Glen Hyde, Hyde-Way, Inc., Aviation Utilities Services, Inc., and Texas Air Classics, asserting claims of, among other things, breach of contract and tortious interference, as well as requesting, among other things, that Appellants be temporarily enjoined from withdrawing funds derived from fees paid to obtain licenses for the use of the runways and taxiways at Northwest Regional Airport and from interfering with Ray’s or Ray’s tenants’ use of the runways and taxiways at Northwest Regional Airport.  The trial court granted the temporary injunction.  In three issues, Appellants argue that the trial court abused its discretion by granting the temporary injunction.  Because we hold that the trial court did not abuse its discretion, we affirm the trial court’s order.

Background Facts

Texas Air Classics owns Northwest Regional Airport’s runways and taxiways, which it bought from Hyde-Way.  
When Hyde-Way bought the airport, it also bought a large portion of the adjoining property for development. In 1983, Hyde-Way filed deed restrictions and a license agreement with the Denton County Clerk for the property that it developed.  
Ray, Cragin, and approximately 184 other individuals own hangars near the airport.  Appellees’ hangars are part of the property developed by Hyde-Way.  Ray initially bought the hangar now owned by Cragin in 1991 and converted it to a residential apartment.  After selling his apartment to Cragin in 2002, Ray bought another hangar.

Pursuant to the license agreement attached to the deed restrictions, the hangar owners may pay a fee to obtain a license to use the runways and taxiways.  The license fee is collected to provide “for the maintenance, repair, construction and reconstruction of the airport facilities” and “a reasonable payment to the Licensor for his necessary services and time.”  The deed restrictions encourage improvements on the property but require plans and specifications of the improvements to be submitted to and approved in writing by Hyde-Way.  The restrictions provide that the hangars cannot be used for residential purposes.  When Hyde-Way sold the airport to Texas Air Classics, it retained exclusive right to collect the license fee and grant access to the runways and taxiways as set forth in the license agreement.
 
 
Thus, Hyde-Way controls the license fee funds and claims ownership in the funds.  Hyde-Way never withdrew any of the funds as compensation for services and time until this suit commenced, at which time it withdrew $25,000.

Appellees are both using their hangars for residential purposes.  Ray was also observed digging up the taxiway and pouring concrete in front of his hangar, blocking the taxiway from being used.  At no time did Ray submit or receive approval for this activity.  Additionally, Ray had his contractor dump the excess dirt on Hyde’s property, blocking the drainage.  Because Hyde-Way believed that these actions violated the deed restrictions, Hyde-Way informed Appellees that the violations terminated the license and that neither they nor their tenants could use the runways and taxiways any longer.  After attempting to use the runways and taxiways and being prevented from doing so by Hyde-Way, Appellees filed for an injunction to keep Appellants from preventing their use of the runways and taxiways and also to prevent Appellants from withdrawing any of the license fee funds.

Appellees originally sued Appellants to, among other things, enjoin them from disconnecting water to their hangars.  The trial court granted a temporary injunction regarding the water, which was appealed to this court.
(footnote: 2)  This court abated the case until the hearing before the water commission has been concluded and the commission has made findings relevant to that issue.  The temporary injunction at issue in this appeal (the second temporary injunction) enjoins Appellants from accepting Ray’s license fee, from interfering with Ray’s and Ray’s tenants’ use of the runways and taxiways, and from withdrawing more than the ordered amount from the license fee funds.

Appellants now argue that the trial court abused its discretion by granting the second temporary injunction because necessary and indispensable parties were not joined in the suit, the injunction was based upon an improper revising of the governing license instrument, and the undisputed evidence established that Ray and Ray’s tenants became trespassers.

Standard of Review

The sole issue before the trial court in a temporary injunction hearing is whether the applicant may preserve the status quo of the litigation's subject matter pending trial on the merits.
(footnote: 3)  An applicant must plead and prove three elements to obtain a temporary injunction:  (1) a cause of action against the defendant; (2) a probable right to the relief; and (3) a probable, imminent, and irreparable injury in the interim.
(footnote: 4)  An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.
(footnote: 5)
 The applicant for a temporary injunction is not required to establish that he or she will prevail upon a final trial.
(footnote: 6)  The merits of the applicant's suit are not presented for review.
(footnote: 7)  Our review is strictly limited to whether the trial court abused its discretion in granting the temporary injunction.
(footnote: 8)  We may not substitute our judgment for that of the trial court by vacating or modifying an injunction simply because we would have decided otherwise.
(footnote: 9)  An abuse of discretion does not occur as long as there is some evidence to support the trial court’s decision.
(footnote: 10)  Furthermore, an abuse of discretion does not exist where the trial court bases its decision on conflicting evidence.
(footnote: 11)  As the reviewing court, we must draw all legitimate inferences from the evidence in a manner most favorable to the trial court's order granting a temporary injunction and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion.
(footnote: 12)
Necessary and Indispensable Parties

We first consider Appellants’ issue that the temporary injunction was improperly granted because the remaining 184 property owners and the members of the Northwest Regional Property Owners Association having an interest in the deed restrictions and in Appellants’ use of the licensing funds are necessary and indispensable parties that were not joined.
(footnote: 13)  We are concerned that, at least insofar as Appellees’ request for declaratory judgment in the underlying lawsuit is concerned, some, if not all, of such persons would be indispensable parties.
(footnote: 14)  But courts have held that a person with rights to be preserved pending final trial need not join all necessary parties before obtaining interim orders, such as a temporary injunction.
(footnote: 15)  “Persons against whom no complaint of wrongdoing is lodged and against whom no injunctive relief is sought are not indispensable parties to a proceeding for temporary injunction.  It may well be that other parties will have to be brought into the suit.  This, however, is not fatal to the temporary equitable relief granted.”
(footnote: 16)
 In 
Lowe v. City of Del Rio
, the Texas Supreme Court, after reversing a final judgment for lack of indispensable parties, expressly ordered that the temporary injunction granted by the trial court remain in effect pending a final determination of the controversy on the merits.
(footnote: 17)  This is clearly a holding that the absence of parties whose presence is essential to the final determination of a controversy does not preclude the granting of temporary relief.
(footnote: 18)
 Thus, on appeal of a preliminary matter, such as the issuance of this temporary injunction, the question of necessary and indispensable parties is not reached.
(footnote: 19)  Appellees’ pleadings and the evidence establish that Appellees seek to temporarily enjoin only the allegedly wrongful conduct of Appellants, who are now before us and whose conduct is solely responsible for Appellees’ claimed injury.
(footnote: 20)  Therefore, we overrule Appellants’ first issue.

Temporary Injunction Elements

To obtain a temporary injunction, an applicant must plead and prove the absence of an adequate remedy at law; probable, imminent, and irreparable injury in the interim; and probable right to recover on the merits.
(footnote: 21)  We construe Appellants’ second and third issues as challenges to Appellees’ probable right to recover on the merits.

Probable Right to Recover

Appellants’ second issue challenges Appellees’ probable right to recover on any claim regarding the withdrawal of money from the license fee fund.  Accordingly, they contend the trial court erred in issuing the second temporary injunction regarding the challenged expenditures.  
Appellants contend several provisions of the license contract expressly permit them to expend unspecified amounts of funds from the license fees to Hyde-Way as management compensation, even though Hyde-Way holds equitable title to the funds.  While the findings of the trial court read much like an order of declaratory judgment, we are restrained from reviewing more than the temporary injunction that is before us on interlocutory appeal.
(footnote: 22)  We therefore may not examine the merits of the declaratory judgment action brought by Appellees.  After reviewing the record, we determine that Appellees have sufficiently demonstrated a probable injury and a probable right to recovery for the purposes of this temporary injunction.
(footnote: 23)
 The expression “probable right to recover” is a term of art; it does not imply any kind of determination that becomes the law of the case, and the district court did not, by its determinations, find the truth and apply the law based on “probabilities” in the meaning that word has in ordinary usage.
(footnote: 24)  Instead, concerning both the facts and the law, Appellees were only required to show “that a bona fide issue exists as to [their] right to ultimate relief.”
(footnote: 25)  That is, Appellees were required only to adduce evidence that tends to support their right to recover on the merits.
(footnote: 26)
 We hold the trial court reasonably concluded that Appellees showed a probable right of recovery.  The contract documents were undisputed by the parties in the evidentiary hearing.  Unless the contracts authorize Appellants to expend the money in lump sum for twenty years of work, Appellants are entirely without any contractual authority to withdraw the money for that purpose.

The contract provisions urged by Appellants are quite general.  They do not explicitly declare whether Appellants may expend the funds in a large lump sum, as Appellants have done.  The contract documents do not give Appellants that authority in explicit terms.  If the authority exists, it must be in consequence of a construction given the documents by the court after final hearing as to the intentions of the parties.  Appellees showed the existence of a bona fide issue; no more was required.  Therefore, the trial court did not abuse its discretion.  We overrule Appellants’ second issue.

Appellants’ third issue challenges Appellees’ probable right to recover from a breach of the license agreement or tortious interference.  Appellants argue that Appellees were trespassers on the runway and thus they did not have a probable right to recover on the merits of their claims in the underlying lawsuit of breach of the license or tortious interference.  

The license agreement does not explicitly state that a violation of the deed restrictions terminates the license.  Although, upon trial on the merits, it may be found that Appellees did in fact violate the deed restrictions and should be penalized, neither the deed restrictions nor the license agreement clearly states that termination of the license is the penalty for such a violation.  Again, if the authority for termination exists, it must be in consequence of a construction given the documents by the court after final trial on the merits.
(footnote: 27)  Because bona fide issues exists regarding Appellants’ ability to terminate the license for deed restriction violations, we hold that the trial court did not abuse its discretion by finding that Appellees have a probable right to recover for purposes of maintaining the status quo until trial on the merits.  We overrule Appellants’ third issue.

Conclusion

Having overruled Appellants’ issues, we affirm the trial court’s order.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ. 

DELIVERED:  June 10, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Hyde v. Ray
, No. 02-03-123-CV.

3:
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 204 (Tex. 2002); 
Walling v. Metcalfe
, 863 S.W.2d 56, 57 (Tex. 1993); 
Mabrey v. SandStream, Inc.
, 124 S.W.3d 302, 308–09 (Tex. App.—Fort Worth 2003, no pet.).

4:
Butnaru
, 84 S.W.3d at 204; 
Walling
, 863 S.W.2d at 57; 
Mabrey
, 124 S.W.3d at 309.

5:
Butnaru
, 84 S.W.3d at 204; 
Canteen Corp. v. Republic of Tex. Props., Inc.
, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ).

6:
Butnaru
, 84 S.W.3d at 204 (citing
 Sun Oil Co. v. Whitaker
, 424 S.W.2d 216, 218 (Tex. 1968)); 
Walling
, 863 S.W.2d at 58; 
Mabrey
, 124 S.W.3d at 309.

7:
Mabrey
, 124 S.W.3d at 309; 
Universal Health Servs. Inc. v. Thompson
, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.); 
Birnbaum v. Alliance of Am. Insurers
, 994 S.W.2d 766, 783 (Tex. App.—Austin 1999, pet. denied) (noting that appeal from temporary injunction may not be used to obtain advance ruling on merits), 
abrogated on other grounds
 
by
 
In re Bass
, 113 S.W.3d 735 (Tex. 2003) (orig. proceeding).

8:
See Butnaru
, 84 S.W.3d at 204; 
Mabrey
, 124 S.W.3d at 309; 
Gen. Fin. Servs., Inc. v. Practice Place, Inc.
, 897 S.W.2d 516, 519 (Tex. App.—Fort Worth 1995, no writ).

9:
Mabrey
, 124 S.W.3d at 309; 
Miller Paper Co. v. Roberts Paper Co.
, 901 S.W.2d 593, 598 (Tex. App.—Amarillo 1995, no writ); 
see also Butnaru
, 84 S.W.3d at 211.

10:
Butnaru
, 84 S.W.3d at 211; 
Mabrey
, 124 S.W.3d at 309.

11:
Mabrey
, 124 S.W.3d at 309.

12:
Id
.; 
Bell v. Tex. Workers Comp. Comm'n
, 102 S.W.3d 299, 302 (Tex. App.—Austin 2003, no pet.); 
Rugen v. Interactive Bus. Sys., Inc.
, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ); 
Bertotti v. C.E. Shepherd Co.
, 752 S.W.2d 648, 651 (Tex. App.—Houston [14th Dist.] 1988, no writ).

13:
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 37.006(a) (Vernon 1997);
 Tex. Prop. Code Ann.
 § 201.010 (Vernon 2000); 
Tex. R. Civ. P.
 39.

14:
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 37.006(a);
 Tex. Prop. Code Ann.
 § 201.010; 
Tex. R. Civ. P.
 39. 

15:
Crain v. Firemen's & Policemen's Civil Serv. Comm’n of City of Fort Worth
, 495 S.W.2d 20, 24 (Tex. App.—Fort Worth 1973, writ ref’d n.r.e.), 
disapproved on other grounds by Firemen’s & Policemen’s Civil Serv. Comm’n of City of Fort Worth v. Williams
, 531 S.W.2d 327 (1975); 
Speedman Oil Co. v. Duval County Ranch Co., Inc.
, 504 S.W.2d 923, 926–27 (Tex. App.—San Antonio 1973, writ ref’d n.r.e.); 
Littlejohn v. Finder
, 348 S.W.2d 237, 239 (Tex. App.—San Antonio 1961, no writ); 
Temple ISD v. Proctor
, 97 S.W.2d 1047, 1051 (Tex. App.—Austin 1936, writ ref’d). 

16:
Speedman Oil Co.
, 504 S.W.2d at 926; 
Hidalgo County Water Improvement Dist. No. 2 v. Cameron County Water Control & Improvement Dist. No. 5
, 253 S.W.2d 294, 299–300 (Tex. App.—San Antonio 1952, writ ref'd n.r.e.).

17:
122 S.W.2d 191, 192 (Tex. 1938)
; 
Hidalgo County Water Improvement Dist. No. 2
, 253 S.W.2d at 299–300. 

18:
Hidalgo County Water Improvement Dist. No. 2
, 253 S.W.2d at 299.

19:
See Brooks v. Expo Chem. Co.
, 576 S.W.2d 369, 370 (Tex. 1979); 
Rogers v. Howell
, 592 S.W.2d 402, 403 (Tex. App.—Dallas 1979, writ ref’d n.r.e.); 
Charter Med. Corp. v. Miller
, 547 S.W.2d 77, 78 (Tex. App.—Dallas 1977, no writ).

20:
See Speedman Oil Co.
, 504 S.W.2d at 926.

21:
Butnaru
, 84 S.W.3d at 204; 
Walling
, 863 S.W.2d at 57; 
Mabrey
, 124 S.W.3d at 309.

22:
See Tex. Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.
, 997 S.W.2d 651, 658 (Tex. App.—Austin 1999, pet. dism’d w.o.j.).

23:
See id
.

24:
183/620 Group Joint Venture v. SPF Joint Venture
, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism’d w.o.j.).

25:
Id
.

26:
Id
.

27:
See id
.